The **INTERLEGO A.G.**, Plaintiff,

v.

The **LESLIE–HENRY CO.**, Inc., the De Luxe Game Corporation, and the Senelev Company, Defendants.
Civ. No. 7660.

United States District Court
M. D. Pennsylvania.
Feb. 16, 1963.

See also 32 F.R.D. 9.

James W. Scanlon, Scranton, Pa., Stevens, Davis, Miller & Mosher, Washington, D. C., for plaintiff.

James, Harris, McLean, Silverblatt & Miner, Wilkes-Barre, Pa., William R. Liberman, New York City, for defendants.

SHERIDAN, Chief Judge.

This is a motion by plaintiff to enjoin defendants, pendente lite, from engaging in certain alleged practices of unfair competition.

Plaintiff is a Swiss corporation doing business in Zug, Switzerland. Defendants are New York corporations doing business in Wilkes-Barre and Kingston, Luzerne County, Pennsylvania. Under an agreement, dated April 21, 1961, plaintiff gave to Shwayder Bros., Inc., Denver, Colorado, a license to manufacture and sell toy building bricks in the United States. Under an agreement, dated April 15, 1961, Sven Willumsen, a Denmark toy manufacturer, gave defendants a license to manufacture and sell toy building bricks in the United States.

The building bricks manufactured by plaintiff's licensee and by defendants are so made that they will lock together without the use of adhesive. The locking device permits a child to avoid accidental demolition of his structure, while deliberate unlocking is quite easy.

On April 18, 1962, the plaintiff filed a complaint which alleged patent infringement, unfair competition, and trademark infringement. Count I alleges that defendants are infringing plaintiff's Letters Patent by making, using and selling toy plastic building brick sets and sets of individual toy building elements embodying plaintiff's patented invention. Count II alleges that defendants are engaging in unfair competition in attempting to benefit from plaintiff's good will and advertising by (a) marketing toy plastic building bricks of the same colors and dimensions as plaintiff's, and which are completely interchangeable with plaintiff's, with the result that defendants unfairly benefit from the wide

commercial acceptance and advertising of plaintiff's product, and there is confusion in the trade; (b) offering its product in a box confusingly similar to plaintiff's, and by employing the trademark LINO, which is similar to plaintiff's trademark LEGO; (c) advertising its bricks as the LINO METHOD, whereas, plaintiff's product has been associated with the term LEGO SYSTEM. Count III alleges trademark infringement in that defendants' trademark LINO is confusingly similar to plaintiff's registered trademark LEGO because the two marks are being used on goods of identical descriptive properties.

The plaintiff does not seek injunctive relief for the patent and trademark infringement allegations in Counts I and III, respectively, and has indicated its willingness to await trial on the merits of these matters.

Plaintiff's motion is directed to Count II of the complaint since plaintiff seeks to restrain defendants from:

"1. The advertising or other promotion or the manufacture, use or sale of toy plastic building brick which are dimensionally interchangeable with the Lego product of plaintiff's licensee. Interchangeability results from a brick having a height of ⅜", another dimension of ⅝" and a third dimension of ⁵⁄₁₆" multiplied by a factor of from 1 to 4;

"2. The conjoint use of LINO and METHOD as trade marks or in the advertising or other promotion of toy plastic building brick;

"3. The use of LINO as a trade mark or in the advertising or other promotion of toy plastic building brick; and

"4. Reference to the Danish origin of the product in advertising or other promotion of a toy building brick."

In its motion the plaintiff does not request that defendants be enjoined from using similar interlocking devices or product colors, although at the hearing and in its brief plaintiff argued to enjoin defendants' use of the interlocking devices and colors. While Rule 7(b) (1) of the Federal Rules of Civil Procedure provides that a motion must state with particularity the grounds and the relief or order sought, the defendants argued all the matters raised by plaintiff's brief and oral argument. The defendants did not object to these procedural defects. The request to enjoin defendants' use of the interlocking devices and colors, therefore, will be considered in this motion. See McNichols v. Lennox Furnace Co., N.D.N.Y.1947, 7 F.R.D. 40.

█ A preliminary injunction should be granted only in a clear case. The court must be satisfied that it is necessary to prevent irreparable injury during the pendency of the action. The moving party must show at least a reasonable probability of success in the principal action. The court should balance the conveniences and injuries which will be caused by the grant or denial of the injunction. Warner Bros. Pictures, Inc., et al. v. Gittone, 3 Cir., 1940, 110 F.2d 292; Joseph Bancroft & Sons Co. v. Shelly Knitting Mills, Inc., 3 Cir., 1959, 268 F.2d 569; Speedry Products, Inc. v. Dri Mark Products, Inc., 2 Cir., 1959, 271 F.2d 646.

██ Plaintiff's allegation of unfair competition caused by defendants' imitation of plaintiff's toy building bricks relates to the interlocking and outside dimensional features, and the colors of the bricks. All parties agree that interlocking is a functional feature of the bricks. A functional feature may be freely imitated or copied and not result in unfair competition. Unfair competition results when a person, through deception or confusion, attempts to pass off his product as that of the person's whose product is imitated. Smith, Kline & French Laboratories v. Waldman, E.D. Pa.1946, 69 F.Supp. 646, 648; Smith, Kline & French Laboratories v. Clark & Clark, 3 Cir., 1946, 157 F.2d 725, 730, 731; Vaughn Novelty Mfg. Co. v. G. G. Greene Mfg. Corp., 3 Cir., 1953, 202 F.2d 172. Whether the other allegations of unfair competition caused by defendants' advertising, promotion, and other practices, or the use of a similar trade-

mark amount to passing off would not affect defendants' right to manufacture, use, or sell a toy brick embodying functional features resembling those of plaintiff's brick. These relate only to the question of whether those practices should be enjoined to prevent passing off. See Smith, Kline & French Laboratories v. Clark & Clark, supra, 157 F.2d at page 731.

■ Plaintiff contends that the dimensions and colors are non-functional, and that defendants' imitation of the appearance of the bricks results in identity of product appearance and amounts to unfair competition. Defendants contend that the outside dimensions and colors are functional. Aside from any question of patent infringement, and assuming the outside dimensions and colors to be non-functional, to justify an injunction plaintiff must show that its product has attained a "secondary meaning," that is, the appearance of its product has come to mean that plaintiff makes it, and that the public is interested in this fact, and not merely in its appearance or structure. The demand must be for a product made by the plaintiff as distinguished from a demand for a product for which the plaintiff has created a market. The questions are whether the public is moved to buy the article because of its source, and what are the features by which it distinguishes that source. Gum, Inc. v. Gumakers of America, Inc., 3 Cir., 1943, 136 F.2d 957, 959; R. M. Palmer Company v. Ludens, Inc., E.D.Pa.1955, 128 F.Supp. 672; affirmed, 3 Cir., 1956, 236 F.2d 496.

There is no evidence that the public has associated bricks of a particular size or color with the plaintiff or its licensee. The distinguishing features of plaintiff's bricks appear to be the firmness and preciseness with which the bricks interlock, allowing one to build without the frustration of accidental demolition of his project, together with the various types of projects that may be constructed. The plaintiff does not use either the size or the colors to promote the sale of its product.

Defendants' sets include both red bricks and white bricks, while plaintiff's sets include bricks of these colors in some sets, as well as yellow bricks and blue bricks in others. At the hearing, defendants produced sets of toy bricks, non-interlocking, which were on the market in red and white colors before plaintiff marketed its product in the United States.

■ Plaintiff has not shown that a secondary meaning attaches to the appearance of its bricks. Absent a patent, the defendants may imitate the plaintiff's bricks provided defendants' product is in some way identified as that of the defendants rather than the plaintiff's. Gum, Inc. v. Gumakers of America, Inc., supra, 136 F.2d pages 959–960. Defendants' bricks are not identical to plaintiff's bricks. Plaintiff's interlocking device is characterized by round hollow cylinders, extending from the inner face of the bottom wall of the brick, which wedge with the interior edges of that brick and round uniformly spaced flat-top studs on the top of another brick, to create a locking. The name LEGO appears on each stud. Defendants' interlocking device is characterized by a cross wall element, extending from the inner face of the bottom wall of the brick, which wedges with the interior edges of that brick and round uniformly spaced recessed studs on the top of another brick, to create a locking. Defendants' bricks are not identified by trademark or manufacturer.

With respect to product identification, the differences in defendants' and plaintiff's licensee's packages are significant, since the bricks are packaged and sold mainly in sets. Plaintiff's licensee's smaller sets are sold in rectangular containers while the larger sets are sold in flat rectangular boxes. The packages generally include the head and shoulder of a boy and a girl building a town project or a house which are partially pictured. The only lettering on the package which relates to product identification is the name, prominently displayed, "LEGO SYSTEM by Samsonite."

At the time this motion was argued, defendants marketed only one set which was sold in a tall cylindrical container. The container shows large full-size pictures of a church and a house, and a smaller picture of four children building structures on a board which includes tracks and a train, all in separate panels. The lettering on the container which relates to product identification is the name, prominently displayed in two places, "Modern Builder," and the mark "Diamond H. Brand" characterized by a diamond of black lines on a yellow background.

■ Related to the question of manufacture and sale of an imitated product is plaintiff's request to enjoin defendants' advertising or promotion of a product which is dimensionally interchangeable with plaintiff's bricks. As previously noted, absent a patent, a person may imitate the product of another provided there is no attempt to pass off his product as that of another, and provided the product is properly identified as his product. This includes the right to imitate non-functional features, which have not acquired a secondary meaning, and to tell the public it is being done. See Gum, Inc. v. Gumakers of America, Inc., supra.

In its affidavits plaintiff states that defendants are not only marketing a dimensionally interchangeable brick, but are stressing the interchangeability of its brick with that of plaintiff's brick in promotional endeavors. Plaintiff states that a wall could be built alternating between plaintiff's and defendants' bricks, and the wall would be indistinguishable from a wall made entirely of one product or the other. An affidavit of an employee of plaintiff's licensee states that during the 1962 Toy Fair, he was informed by a buyer that defendants were stressing the interchangeability of their brick with that of plaintiff's. He also states that he observed defendants' display of buildings which, on visual inspection of the outside walls of the bricks, appeared to include a top layer of defendants' brick, with LEGO brick underneath, so that the interchangeability of defendants' and plaintiff's bricks could be demonstrated.

The complete interchangeability of the bricks cannot be demonstrated by using the bricks which are in evidence as exhibits. The eight stud brick appears to be the standard sized brick, as distinguished from those bricks of a greater or lesser length having more or less than eight studs. The defendants' eight stud brick is not as long as plaintiff's brick, and the studs on defendants' bricks are closer together. Since the cross wall element of defendants' brick is flexible, it is possible to place defendants' bricks on plaintiff's bricks and force the cross wall element to press against the studs on plaintiff's bricks to create a locking, although the bricks will not lay properly and noticeable gaps appear. Because of the difference between plaintiff's and defendants' locking devices, together with the difference in the distances between studs, when plaintiff's brick is placed on defendants' brick, it is not possible to cause the bricks to lock or to lay evenly.

Defendants have denied stressing interchangeability. There is no evidence that defendants' advertising, packaging, instructions or other promotional or sales media mention the interchangeability of the two products.

Defendants' container in small lettering indicates that its product was designed in Denmark. Defendants' advertising indicates that defendants have arranged with a Danish toy designer, Sven Willumsen, to sell the bricks in America. Defendants submitted an affidavit by Willumsen which states that he is in the business of manufacturing toys in Denmark, that he designed and patented a toy brick in Denmark in 1957, and that in February, 1961, he entered into a licensing arrangement with defendants to manufacture and sell his bricks in America.

Plaintiff's brick was also designed by a Dane, Gotfred Kirk Christiansen, and the manufacture and sale of this brick is controlled by plaintiff. Plaintiff makes no claim of infringement of trademark

or tradename in connection with defendants' reference to the Danish origin of their product, but asserts that such reference is calculated to cause confusion in the trade.

A geographic name which has reference to the place of origin, use or manufacture of a product is generally subject to use by all persons unless that name has acquired a secondary meaning, that is, a public identification of the name with a product of a particular individual or entity. North American Aircoach Systems v. North American Aviation, Inc., 9 Cir., 1955, 231 F.2d 205; LaTouraine Coffee Co., Inc. v. Lorraine Coffee Co., Inc., 2 Cir., 1946, 157 F.2d 115.

While in some promotions plaintiff has indicated the Danish origin of its product, numerous posters, circulars, newspaper advertisements, and other advertising media, submitted by plaintiff, feature the European origin of its product without specifying the product's Danish origin. This is not sufficient evidence that the public has identified plaintiff's product with its Danish origin. It is difficult to see how a secondary meaning could be established in view of the short length of time that plaintiff has been in the American market.

Plaintiff also seeks to enjoin defendants' use of LINO and conjoint use of LINO and METHOD as trademarks, or in advertising or promotion of defendants' product because such names are confusingly similar to plaintiff's trademark LEGO and LEGO SYSTEM.

Aside from any statutory rights granted under the trademark laws, if a trademark or name is so connected with a product that it is a symbol which indicates the origin of the product, the user of the mark has a right to prevent his product from being confused in the trade with another product. A proprietor of a trademark or tradename identified with his business and characterized by advertising and good will built by him has a cause of action against one who by unfair means usurps the good will and distinctive attributes of the business of the other. An unfair practice may consist of a party's introduction of a mark or name, susceptible of deceiving the market, which is confusingly similar to the business that another has built up in association with a trademark, name or device. House of Westmore, Inc. v. Denney, 3 Cir., 1945, 151 F.2d 261, 265. The test is whether an ordinarily prudent purchaser would be liable to purchase the goods of one believing them to be the goods of another. Gamlen Chemical Co. v. Gamlen, W.D.Pa.1948, 79 F. Supp. 622.

The use of LINO by defendants' licensor in Belgium prior to plaintiff's use of LEGO in the United States is not a defense. Belgium and the United States are remote markets, and there are no circumstances in the record to make this material. See United Drug Company v. Theodore Rectanus Company, 1918, 248 U.S. 90, 101, 39 S.Ct. 48, 63 L.Ed. 141; Quality Courts United, Inc. v. Quality Courts, Inc., M.D.Pa.1956, 140 F.Supp. 341, 349; Coty, Inc. v. Parfums De Grande Luxe, Inc., 2 Cir., 1924, 298 F. 865.

Moreover, the record does not support defendants' use of LINO in Europe prior to plaintiff's use of LEGO in Europe. That defendants' licensor had marketed its product in this country prior to plaintiff's entry into this market is also without merit because such marketing was not done under LINO.

More fundamental is whether plaintiff's tradename LEGO is so connected with the toy bricks that it is a symbol which indicates the origin of those bricks. Plaintiff and its licensee have used extensively the terms LEGO and LEGO SYSTEM in promoting their products. These terms have been used in national trade magazines, advertisements, nationwide television commercials, advertisements in newspapers in major cities throughout the United States, store displays, brochures, placards and other promotional media. The wide promotion and sale of the product, however, started after August, 1961. The boxes in which the

brick sets are sold have the terms "Lego Systems by Samsonite" prominently displayed in large lettering.

There is little in the record to indicate that LEGO signifies, in the public mind, toy bricks manufactured by the plaintiff. Plaintiff's exhibits contain several letters from purchasers, which compliment plaintiff's licensee on the product. There are also several letters from retail stores, which state that the Christmas, 1961, sales of the Lego product were excellent. It cannot be presumed, however, that the wide advertising and promotion has caused LEGO to be identified with bricks marketed by the plaintiff. The plaintiff has not met its burden to establish that the name LEGO is identified with toy bricks marketed by plaintiff.

The record does not establish other predatory practices by defendants, such as actual deception or appropriation of plaintiff's property rights, which would entitle the plaintiff to relief even though the secondary significance of the name LEGO has not been established. See Norwich Pharmacal Company v. Sterling Drug, Inc., 2 Cir., 1959, 271 F.2d 569; Safeway Stores, Inc. v. Sklar, E.D.Pa. 1947, 75 F.Supp. 98.

Even had plaintiff established the secondary significance of LEGO, there is not sufficient evidence on which to find a likelihood of confusion in the purchasing public. There is no evidence that defendants used packages marked LINO METHOD. See Yard-Man, Inc. v. Savage Arms Corp., 220 F.2d 782, 42 C.C.P.A. 862. The defendants' brick set container includes the name "Modern Builder" in large black lettering. The mark on the container is "Diamond H. Brand" printed in conjunction with a black lined diamond symbol. In the April, 1962, editions of Toys and Novelties and Playthings, national toy trade magazines, defendants have page and one-third advertisements which include the wording, in large letters, "Introducing LINO METHOD" and "More to Build with LINO METHOD." The only other evidence to show the extent of defendants' promotion of their product in association with these terms are affidavits which state defendants displayed bricks promoted under the name LINO in one of their New York City show rooms and at the March, 1962, toy show.

Motion for an injunction, pendente lite, will be denied.