**IDEAL TOY CORPORATION,**
Plaintiff,

v.

**FAB–LU, LTD. (Inc.), Defendant.**
**No. 64 Civ. 3112.**

United States District Court
S. D. New York.
Dec. 8, 1966.

Amster & Rothstein, New York City, for plaintiff; Morton Amster, New York City, of counsel.

Edward Halle, Garden City, N. Y., for defendant.

WEINFELD, District Judge.

Plaintiff commenced this action upon a six-count complaint charging the defendant with various acts of infringement and unfair competition centering about two dolls created and manufactured by it.

The defendant has already consented to judgment as to counts 2 and 3, which alleged trademark infringement, and count 4, which charged a violation of New York's "anti-dilution statute." [1] The matter is now before the court on plaintiff's motion for summary judgment on counts 1, 5 and 6. The parties are in ac-

---

1. New York Gen.Bus.Law, McKinney's Consol.Laws, c. 20, § 368-d (1961).

cord that there is no substantial issue of fact with respect to these counts and the matter is ripe for summary judgment.[2] The absence of any factual controversy is the result of admissions by the defendant hereafter referred to in response to a request made pursuant to Rule 36(a) of the Federal Rules of Civil Procedure.

Plaintiff is one of the largest manufacturers of dolls in the United States. In early 1962 it introduced and marketed a new twelve-inch teenage doll and a line of clothing therefor, both identified by the trademark "Tammy." Its product met with immediate and marked success, the sales of the dolls and related products reaching in excess of twenty million dollars over a three-year period.

The extraordinary success of Tammy led the plaintiff in 1963 to introduce and market a pre-teenage sister doll and a line of clothing therefor, both identified by the trademark "Pepper," which also enjoyed considerable success. The sales promotion of the two dolls and related products, by way of network, spot television and trade media advertising, exceeded three million dollars.

Plaintiff, in 1963, registered claims to copyright of each doll, Tammy and Pepper, as "[w]orks of art; models or designs for works of art,"[3] and certificates of registration were duly issued. The defendant acknowledges that plaintiff has the exclusive right and privilege to the copyrights of both dolls.[4]

The defendant, an importer of dolls, introduced and marketed within the period in question a doll and line of clothing therefor, both identified by the mark "Randy," which simulated Tammy, and another doll and clothing therefor, both identified by the mark "Mary Lou," which simulated Pepper. The Randy and Mary Lou dolls were sold in competition with and at lower prices than plaintiff's Tammy and Pepper dolls.

Plaintiff sought a preliminary injunction, which Judge MacMahon granted only with respect to a violation of section 43(a) of the Lanham Act[5] (count 1), since it appeared from the affidavits that the defendant had engaged in deceptive advertising with respect to the Randy doll. However, as to the counts of copyright infringement of both Tammy and Pepper, Judge MacMahon denied preliminary relief, noting that although "the accused dolls are similar to plaintiff's dolls in size and shape, and indeed some features (such as head and arms) are virtually identical, we think the total effect of the image conveyed to an ordinary observer by the accused dolls is quite distinct from that of plaintiff's dolls" (citing cases), and concluding that plaintiff failed to show "a reasonable probability that it will be able to prove copyright infringement as to either of its dolls upon the trial." Plaintiff, based upon the defendant's deposition, which was not before the court on the original motion, sought reargument and reconsideration of its denial of injunctive relief for copyright infringement, but the court adhered to its prior determination.

Upon appeal the Court of Appeals affirmed the District Court's order and held that it had correctly applied the ordinary observer test, and on the basis of the evidence before it there was no

---

2. See Cortley Fabrics Co. v. Slifka, 175 F.Supp. 66 (S.D.N.Y.), aff'd, 317 F.2d 924 (2d Cir. 1963). Cf. Shapiro, Bernstein & Co. v. H. L. Green Co., 316 F.2d 304 (2d Cir. 1963).

3. 17 U.S.C. § 5(g).

4. As to the validity of copyrights to dolls "of some originality and novelty," see Rushton v. Vitale, 218 F.2d 434, 435 (2d Cir. 1955).

5. 15 U.S.C. § 1125(a). "Any person who shall affix * * * or use in connection with any goods * * * any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods * * * to enter into commerce * * * shall be liable to a civil action * * * by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

abuse of discretion.[6] While the Court of Appeals was concerned with the limited issue of whether the denial of a preliminary injunction constituted an abuse of discretion, it observed that "[a]n examination of the dolls reveals that, while similarities exist as to standard doll features such as the full faces; pert, upturned noses; bow lips; large, widely spaced eyes; and slim figures, distinct differences exist with respect to the neck structures and hair styles, and to a lesser extent with respect to the chin structures and the over-all craftsmanship of the dolls." [7]

■ The denial of preliminary injunctive relief and its affirmance do not control resolution of the ultimate legal and fact issues.[8] Since then the fact picture has been rounded out, as previously noted, by the defendant's admissions made subsequent to those prior rulings.

Despite its denials in the earlier proceedings that it or its supplier in Hong Kong copied plaintiff's dolls, the defendant now concedes it did. The defendant admits that it delivered to its supplier in Hong Kong samples of plaintiff's copyrighted Tammy and Pepper dolls for the purpose of manufacturing its Randy and Mary Lou dolls, with specific directions to use them as models for the defendant's dolls, and to make such changes as necessary to accommodate for the different neck constructions. The defendant further acknowledges that its supplier was instructed to make the Randy and Mary Lou dolls have the same appearance as plaintiff's Tammy and Pepper dolls, and that the preliminary models of Randy and Mary Lou were checked against plaintiff's Tammy and Pepper to insure they would have the same appearance. In sum, except for the neck construction, the defendant concedes deliberate and purposeful copying of plaintiff's copyrighted dolls—even so, the defendant contends it may not be held as an illicit infringer, to use its own words, "so long as [it] * * * did not appropriate from the plaintiff's dolls, in such copying, qualities of appearance which would establish to the average lay observer that a substantial similarity exists between the original and the copy." Thus, we turn to the copyright infringement claims, count 5 (the Tammy doll) and count 6 (the Pepper doll).

■ No matter how one may view the defendant's unethical conduct as a "free rider" in deliberately using plaintiff's copyrighted dolls as its models, with the calculated intent that the end products would have the same appearance as plaintiff's originals, the legal standard to be applied in determining whether illicit infringement has occurred is constant.[9]

---

6. Ideal Toy Corp. v. Fab-Lu Ltd., 360 F. 2d 1021 (2d Cir. 1966).

7. Id. at 1023.

8. The District Court's ruling was made upon the basis of the evidence then before it. Its affirmance meant only that there had been no abuse of discretion. American Visuals Corp. v. Holland, 261 F.2d 652, 654 (2d Cir. 1958). See also Imperial Chemical Indus. Ltd. v. National Distillers & Chemical Corp., 354 F.2d 459, 463 (2d Cir. 1965); Dictograph Prods. Co. v. Sonotone Corp., 230 F.2d 131, 134–36 (2d Cir.), petition for cert. dismissed, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956); Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 742 (2d Cir. 1953).

9. A more limited variant of the theory suggested by plaintiff, that where copying is established "a finding of substantial similarity must be made," has been rejected by the Court of Appeals for this Circuit. Arc Music Corp. v. Lee, 296 F. 2d 186 (2d Cir. 1961). There, the plaintiff argued that "if access is directly proven * * * the degree of similarity between the compositions in order * * * to find copying need not be as great in the event that the access is only indirect and inferential." The court concluded, with respect to substantial similarity, that "access will not supply its lack." Id. at 188. Accord: Burnett v. Lambino, 204 F.Supp. 327, 335 (S.D.N.Y.1962); Prior v. Schuman, 106 F.Supp. 469, 470 (S.D. N.Y.1952); Cain v. Universal Pictures Co., 47 F.Supp. 1013, 1015 (S.D.Cal. 1942); Carew v. R.K.O. Radio Pictures, 43 F.Supp. 199, 200 (S.D.Cal.1942). For a criticism of the Arc Music approach see Nimmer, Copyright § 143.4. See also Trifari, Krussman & Fishel, Inc. v. B.

As stated by our Court of Appeals: "[T]he appropriate test for determining whether substantial similarity is present is whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." [10]

The sum of the defendant's position appears to be that while it undertook to make a slavish copy of plaintiff's copyrighted dolls, crude workmanship defeated its intended purpose and hence it has not infringed. However, an examination of the accused with the authentic dolls establishes that plaintiff has satisfied the "average lay observer" test and is entitled to prevail.

It is true the Tammy doll, just as the Pepper doll, appears to be better constructed and more eye appealing than the defendant's products, but Randy bears such a close resemblance to Tammy, as does Mary Lou to Pepper, that to this average observer they are substantially similar—the faces, the body structures, size, and the features of the respective authentic and copied dolls are virtually identical. The slight difference, such as the neck construction, observable only upon a close and fine inspection, does not detract from their substantial similarity. The difference is due to the fact that plaintiff's dolls have the necks molded as part of the head, whereas the defendant's necks are molded as a portion of the body. This different neck construction appears to have been deliberately calculated by the defendant to ward off the present charges,[11] but in end result has no significance as far as the outward ordinary appearance of the dolls is concerned. Indeed, normal observation of the dolls did not at once reveal the difference in neck structure, and when the matter was emphasized upon argument, it was necessary to remove the garb to observe just where the claimed difference appeared. In this regard, it may not be without significance that several of defendant's doll costumes have high necklines. Not only is the difference in neck construction not noticeable upon casual viewing, it is of the type which, as Chief Judge Learned Hand observed, the "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook * * * and regard [the] * * * aesthetic appeal as the same." [12]

And this is particularly so in the instant case where the basic consumer appeal is to youngsters. In applying the test of the average lay observer, they are not to be excluded—indeed they are the "far-flung faithful * * * audience." [13] The television advertising campaign of plaintiff was directed to-

Steinberg-Kaslo Co., 144 F.Supp. 577 (S.D.N.Y.1956) which seems to support plaintiff's position, but was decided before *Arc Music.*

10. Ideal Toy Corp. v. Fab-Lu Ltd., 360 F. 2d 1021, 1022 (2d Cir. 1966). The court has also defined the applicable rule as follows: "The copying need not be of every detail so long as the copy is substantially similar to the copyrighted work. ' * * * the test is whether the one charged with the infringement has made an independent production, or made a substantial and unfair use of the complainant's work.' " Comptone Co. v. Rayex Corp., 251 F.2d 487, 488 (2d Cir. 1958), quoting from Nutt v. National Institute, Inc. For The Improvement of Memory, 31 F.2d 236, 237 (2d Cir. 1929).

11. Cf. Joshua Meier Co. v. Albany Novelty Mfg. Co., 236 F.2d 144, 146 (2d Cir.

1956); Hassenfeld Bros. v. Mego Corp., 150 U.S.P.Q. 786, 788 (S.D.N.Y.1966).

12. Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960). See also Cortley Fabrics Co. v. Slifka, 175 F.Supp. 66 (S.D.N.Y.), aff'd, 317 F.2d 924 (2d Cir. 1963).

13. Rushton v. Vitale, 218 F.2d 434, 436 (2d Cir. 1955). Indeed, if youngsters were excluded in applying the lay public test, the underlying reason for the test would be frustrated. For, as Judge Frank stated in Arnstein v. Porter, 154 F.2d 464, 473 (2d Cir. 1946), the copyright laws protect not the reputation of the copyright holder, but the commercial value of his creation. Just as the relevant public there was held to be the "lay listeners * * * for whom such popular music is composed," the relevant public here must include the children for whom the dolls are created.

ward acquainting these youngsters with Tammy and Pepper, its new teenage and pre-teen dolls. The impression of the faces and general appearance of the dolls was upon them. The plaintiff's and defendant's dolls are so substantially similar that the Randy doll, for example, would readily be mistaken for the Tammy doll. Both are slim, twelve-inch, not fully developed teenage female figures; both have full faces, large widely spaced eyes, pupils positioned to look to the left, long eyelashes, high eyebrows, pert upturned noses, bow lips, and puffed checks; both have movable heads, arms and legs, and both invite the child to acquire an accompanying wardrobe.[14] In sum, the dolls create the same impression, both with respect to their appearances and the play-uses for which they are suited.[15] It is the youngsters who, on the basis of this impression, go to the stores with their parents or at home make their wishes known for the dolls they desire after television has made its impact upon them. In their enthusiasm to acquire Tammy or Pepper they certainly are not bent upon "detecting disparities" or even readily observing upon inspection such fine details as the point at which the necks are molded. To allow the defendant to escape legal liability because of a minor change or because of crude craftsmanship, which did not destroy the substantial similarity of its copies to the authentic, would permit unfair use of plaintiff's copyrighted work. Plaintiff is entitled to judgment on counts 5 and 6.

■ There remains for final consideration count 1, which charges a violation of section 43(a) of the Lanham Act,[16] the only one under which plaintiff obtained preliminary injunctive relief. The proof submitted by plaintiff on this motion for summary judgment is so overwhelming that the defendant does not appear seriously to oppose it. The defendant's admissions indicate that it distributed to the trade a catalogue entitled "67 WAYS IN WHICH TO CASH IN ON THE 'HOTTEST DOLL ITEM' IN THE TOY FIELD TODAY," in which were displayed eighteen dolls named Randy; that seventeen of the eighteen dolls were not Randy, but in fact photographs of plaintiff's Tammy. In addition, the defendant placed advertisements in various trade publications allegedly showing its Randy doll, whereas in fact the photographs were of plaintiff's Tammy. It is not disputed that the photographs of the Tammy doll used in the printed material were taken in Hong Kong under the defendant's direction. Upon the undisputed facts the plaintiff clearly is entitled to judgment under this count.[17]

Submit decree in accordance with the foregoing.

14. There is no issue here as to so-called "standard doll features," since defendant concedes plaintiff has the exclusive rights to the copyrights of the dolls and further admits that he set out to make an exact copy. See Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 54 (2d Cir.), cert. denied, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936).

15. See Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960); Hassenfeld Bros. v. Mego Corp., 150 U.S.P.Q. 786, 787–88 (S.D.N.Y.1966).

16. See n. 5 supra.

17. L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 214 F.2d 649 (3d Cir. 1954); National Dynamics Corp. v. John Surrey, Ltd., 238 F.Supp. 423 (S.D.N.Y.1964); National Dynamics Corp. v. John Surrey, Ltd., 238 F.Supp. 422 (S.D.N.Y.1963); Zandelin v. Maxwell Bentley Mfg. Co., 197 F.Supp. 608, 611 (S.D.N.Y.1961).