CROSSBOW, INC. and E. W. Gilson, Plaintiffs,

v.

DAN–DEE IMPORTS, INC., Defendants.

No. 67 Civ. 328.

United States District Court
S. D. New York.

March 1, 1967.

Leslie D. Taggart, Watson, Leavenworth, Kelton & Taggart, New York City, for plaintiffs.

Robert Faber, Ostrolenk, Faber, Gerb & Soffen, New York City, for defendants.

MOTLEY, District Judge.

### Findings of Fact and Conclusions Of Law

Plaintiffs have brought on this motion for preliminary injunction enjoining defendant from infringing plaintiffs' trademark and enjoining acts of unfair competition on the part of defendant. This court has jurisdiction of the complaint seeking similar permanent relief and damages under 28 U.S.C. § 1338(a) and (b), and 15 U.S.C. §§ 1121, 1125(a) [1] and 28 U.S.C. § 1332.

Plaintiffs are a citizen of the United States and a corporation of the State of Ohio who have jointly created, designed, engineered, manufactured and sold a novelty item signal light bearing the trademark *Drink-Lite*. Plaintiff Gilson was granted Registration No. 817,329 for the trademark *Drink-Lite* by the United States Patent Office on October 25, 1966.

Plaintiffs' novelty light is a device which is adapted for mounting on a glass. This act of mounting sets a trigger which causes the light to glow and then blink. Plaintiffs' lights are sold at $5.40 a dozen through direct contact with distributors. The distributors have advertised the signal lights with the registered trademark and have caused them to be sold throughout the United States. Since the first shipment in September, 1965, and with the success of its major selling effort begun in June, 1966, plaintiffs have sold three-fourths of a million signal lights, each bearing an imprint of the trademark *Drink-Lite*.

Plaintiffs spent about $100,000 from inception of this novelty to its marketing. Plaintiffs produce a high quality item which has met with commercial success. Plaintiffs admittedly have no patent, design patent or other statutorily granted monopoly for production of *Drink-Lite*.

Defendant is a corporation doing business in New York and engaged principally in importing novelty, household, and automobile accessory products from the Orient for resale in the United States at the wholesale level. On occasion, some of its imported items are manufactured to Dan-Dee's specifications.

One item that defendant has caused to be manufactured to its own requirements is a signal light, virtually identical in appearance with plaintiff's product. One of defendant's officers took several models of plaintiff's product to Hong Kong. This occurred sometime during the Fall of 1966.

According to the testimony of Siggi Stern, the vice president of defendant corporation, defendant caused to be copied and manufactured in Hong Kong a "Chinese" copy of plaintiffs' light. The initial copying was done with a unique degree of exactitude—even down to the recreation of plaintiffs' imprinted trademark and place of origin on the base. These copies were then sent to defendant in the United States for use as samples in various trade shows. Mr. Stern testified further that defendant exhibited these reproductions at several such shows after scraping off plaintiffs' trademark. The mark was still visible on close examination. None of the imported samples worked. To this day, defendant has not yet produced a properly functioning working model of its own. For demonstrations, defendant purchased a number of plaintiffs' lights from which the trademark was imperfectly removed. When called on to give a working demonstration of its product, defendant would use plaintiffs' lamps.

Plaintiffs became suspicious of defendant's activities at the Housewares Show held in the Navy Pier Exhibition Hall, Chicago, on January 19, 1967. Plaintiffs' witnesses testified that defendant

---

1. Sections 39 and 43(a) of the Lanham Trademark Act of 1946.

exhibited plaintiffs' product as their own, though defendant's employees prevented them from closely scrutinizing defendant's display. At the hearing, when asked to produce the models it displayed in Chicago, Mr. Stern testified that immediately after the show they were sent to Hong Kong. He also testified that since that time he has had his "own" photographs for sales purposes made. However, on emergency requests plaintiffs' products with the name scraped off are still used as samples. Since the photos used were never produced, and since there is sufficient mystery concerning the samples that were returned to Hong Kong, it is difficult to credit defendant's story that a prototype of their signal light existed at the time of the Chicago show.

Defendant's packaging for its product is different from that used by plaintiffs. Defendant has adopted the trademark *Blink-A-Drink* for its signal light. Language on the packaging other than the key trademark, however, is similar. Defendant admits that when artists designed his package, they had plaintiffs' package on hand. The important "catchy" language on the packages is the same.

Defendant has sold 7000 to 8000 dozen of its lamps for Spring, 1967, delivery. Its price is considerably less per dozen than plaintiffs' product.

Mr. Stern testified that he informed all of defendant's salesmen that defendant was selling a less expensive, imported copy of a domestic novelty item and that its salesmen in turn so advised customers or prospective customers. Dan-Dee asserts that its customers could not confuse its product with that manufactured by plaintiffs, especially since defendant is known for its imported products. This, however, is not borne out by the facts established at the hearing. The evidence disclosed that defendant's salesmen took orders for *Drink-Lite*.

Defendant asserts it has done nothing wrong and claims it has neither infringed plaintiffs' trademark nor engaged in unfair competition. It admits having used plaintiffs' lamp as a sample and that it proposes to sell a less expensive imported copy. The court finds, upon close examination, that defendant's product is of a quality inferior to that of plaintiffs.

Defendant has expended about $20,000 in developing and marketing its item though none has as yet been shipped for delivery and, in fact, have not yet left Hong Kong.

Plaintiffs' product is not protected by a United States Patent, a United States Design Patent, or a Copyright Registration; it is, therefore, "in the public domain and may be made and sold by whoever chooses to do so." Sears, Roebuck & Company v. Stiffel Co., 376 U.S. 225, 231, 84 S.Ct. 784, 11 L.Ed. 2d 661 (1964). Such an unprotected item "can be copied in every detail by whoever pleases." Compco Corporation v. Day-Brite Lighting, Inc., 376 U.S. 234, 238, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). Plaintiffs are clearly not entitled to injunctive relief on the ground that defendant copied their product.

While *Sears,* supra, and *Compco,* supra, held that when an article is not entitled to federal patent or copyright protection, state laws of unfair competition cannot be used to prevent copying these cases acknowledged the state's power to establish other rules of commercial "fair play." In *Sears,* supra, at 232, 84 S.Ct. at 789, the Supreme Court said:

"Doubtless a State may, in appropriate circumstances, require that goods, whether patented or unpatented, be labeled or that other precautionary steps be taken to prevent customers from being misled as to the source, just as it may protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods."

In *Compco,* supra, the Court clarified this dictum. It there stated that federal patent laws

"Do not stand in the way of state law, statutory or decisional, which requires those who make and sell copies to take precautions to identify their products as their own. A State of course has power to impose liability upon those who, knowing that the public is relying upon an original manufacturer's reputation for quality and integrity, deceive the public by palming off their copies as the original." (at 238, 84 S.Ct. at 782)

The law has always condemned "palming off' in commercial dealings. A trader is forbidden to "palm off" his product as that of a competitor. "Palming off" is "the fraudulent representation of the goods of the seller as those of another." Dior v. Milton, 9 Misc.2d 425, 155 N.Y.S.2d 443, 452 (1956), aff'd 2 A.D.2d 878, 156 N.Y.S.2d 996 (1st Dept. 1956). "Palming off" is actionable, *per se.* PIC Design Corporation v. Sterling Precision Corp., 231 F.Supp. 106 (S.D.N.Y.1964). Here, defendant's copying of plaintiffs' product when combined with use of plaintiffs' product as a model, the copying of much of plaintiffs' packaging, acceptance by its salesmen of orders for *Drink-Lite,* plaintiffs' product, show acts and omissions likely to confuse and deceive customers as to the source of defendant's product. These acts evidence intentional conduct by defendant to "palm off" its goods as those of plaintiffs and evidence "a clear attempt to profit at the expense of plaintiff." Flexitized, Inc. v. National Flexitized Corporation, 335 F.2d 774 (2d Cir. 1964), cert. denied, 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965).

This unfair competition is also sufficient to sustain a cause of action cognizable under Section 43(a) of the Lanham Trademark Act, 15 U.S.C.A. § 1125(a). This Section provides, in pertinent part, that: .

"Any person who shall affix * * * or use in connection with any goods or services, or any container * * * for goods, a false designation or origin, or any false description or representation, including any words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action * * * by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

Plaintiffs and defendant are in competition for the signal light market. Suffice it to say that plaintiffs' light appears to be of a higher quality than defendant's.

The application of Section 43(a) of the Lanham Act to this type of activity has been firmly established. In a series of cases, the courts have held that defendant may not use a photograph of plaintiff's product to advertise and sell its own less expensive and inferior product.[1] Such action is clearly unfair competition within the meaning of the statute and may be enjoined under the proper circumstances.

A preliminary injunction has issued even where a defendant has altered the photograph of a plaintiff's product in order to put defendant's trade name or trademark on the product when, in fact, defendant's product was not identical but inferior, National Dynamics Corp. v. John Surrey, Ltd., (Inc.) 238 F.Supp.

1. American Optical Co. v. Rayex Corp., 266 F.Supp. 342 (S.D.N.Y.1966); Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.) 261 F. Supp. 238 (S.D.N.Y.1966); Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.), 266 F.Supp. 755 (S.D.N.Y.1964), aff'd, 360 F.2d 1021 (2d Cir. 1966); National Dynamics Corp. v. John Surrey Ltd., 238 F.Supp. 423 (S. D.N.Y.1964); National Dynamics Corp., v. John Surrey Ltd., 238 F.Supp. 422 (S. D.N.Y.1963); Zandelin v. Maxwell Bentley Mfg., Co., 197 F.Supp. 608, 611 (S.D. N.Y.1961); L'Aiglon Apparel v. Lana Lobell, Inc., 214 F.2d 649 (3rd Cir. 1954).

422 (S.D.N.Y.1963), and when all identifying marks have been removed from plaintiff's pictured product. Zandelin v. Maxwell Bentley Mfg. Co., supra. In the latter case, Judge Van Pelt Bryan stated the rationale for these decisions:

"This section [Lanham Act § 43(a)] applies where a defendant advertises its inferior and much cheaper product by featuring a photographic reproduction of plaintiff's product, thus creates the impression that his product is precisely the same as plaintiffs' and causes trade to be diverted from plaintiff to himself and other trade to be lost." (197 F.Supp. at 611).

The evidence adduced at the hearing showed that defendant's use of plaintiffs' product as a sample and working model had the same effect sought to be prevent-in the photograph cases. First, it tended to create the impression that defendant's cheaper and inferior product was precisely the same as plaintiffs. Second, it caused trade to be diverted from plaintiffs to defendant. Third, it caused other trade to be lost by plaintiff.

Defendant argues that since the Sears, Roebuck & Company v. Stiffel, supra, and Compco Corp. v. Day-Brite Lighting, Inc., supra, cases permit it to make and sell an exact copy of plaintiffs' signal light, its activity here cannot be condemned. Moreover, defendant relies on PIC Design Corporation v. Sterling Precision Corp., supra, as a defense. That case and Mastro Plastics Corp. v. Emenee Industries, Inc., 16 A.D.2d 420, 228 N.Y. S.2d 514 (1st Dept. 1962), aff'd, no opinion, 12 N.Y.2d 826, 236 N.Y.S.2d 347 (1962) did look with disfavor on the unfair competition theory of "reverse palming off"—a situation in which one trader buys the product of another, removes the latter's label, replacing it with his own, and uses it as a sample for his own goods. Mastro, supra, is, however, easily distinguishable from the instant matter because the court expressly limited its ruling to situations where there was no "palming off" and where the recovery sought was based on common law unfair competition. The Mastro court

specifically permitted plaintiff to amend its complaint to plead a cause of action under § 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a).

Chief Judge Ryan in Pic, supra, stated that there was no violation of the Lanham Act "false designation of origin" provision when defendant bought plaintiffs' product, removed all markings, and sold it as its own, though without markings. Here, the situation is different. Defendant is using plaintiffs' product with the labels imperfectly removed as a sample or model for its own cheaper and inferior product. This is something quite different from removing plaintiffs' labels, replacing them with one's own and selling them as one's own product. In fact, though the Pic court said that such activity was not violative of New York's common law of unfair competition, it remarked that the exact same cause "might have come within the language of the Lanham Act." (231 F. Supp. at 115).

■ This court believes that defendant's activity here is a violation of § 43(a) provisions of the Lanham Act relating to "a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same * * *" Defendant has failed to convince this court that in all of its sales with the aid of plaintiffs' product that it expressly told prospective customers that it was selling only a cheaper imported copy of the demonstrated model. The court does not believe that because defendant's name was Dan-Dee Imports, Inc., customers knew they were buying a cheaper imported version of the product. Since defendant is, admittedly, principally a distributor, customers might well have been confused as to whether the item they purchased would be the same as that demonstrated, an American product, or a cheaper and inferior imported copy.

Plaintiffs have registered the trademark Drink-Lite. They seek to enjoin defendant's use of that trademark pursuant to Section 32(1) of the Lanham

Act, 15 U.S.C.A. § 1114(1). This section provides:

"(1) Any person who shall, without consent of the registrant—(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; * * * shall be liable in a civil action by the registrant for the remedies hereinafter provided. * * *"

Defendant claims it has not infringed plaintiffs' mark but has used its own mark *Blink-A-Drink*; that even if it used plaintiffs' mark, since plaintiffs' mark is descriptive it is not entitled to protection.

Plaintiffs' registration of the mark is prima facie evidence of its validity. 15 U.S.C.A. § 1115(a). This, however, "merely gives rise to a rebuttable presumption, and the mark's validity may be attacked in a collateral proceeding." Flexitized, Inc. v. National Flexitized Corporation, supra, at 779. Moreover,

"It has been long established that a trademark is not valid if the terms comprising it, as understood in their normal and natural sense by those to whom the marked product is sought to be marketed, are merely descriptive of the product, or its ingredients, qualities or characteristics, and, absent a showing that the trademark through use has acquired a secondary meaning, it will not be accorded protection. 15 U.S.C. § 1052(e)." ibid.

This court takes no position as to the validity of the plaintiffs' trademark other than to give recognition to the presumption. It does find that plaintiffs' mark has, on occasion, been infringed by defendant. This infringement has occurred simultaneously with defendant's "palming off."

Plaintiffs seek a preliminary injunction. "The award of a preliminary injunction is an extraordinary remedy which will not be granted unless upon a clear showing of probable success and possible irreparable injury to the plaintiffs, lest the proper freedom of action of the defendant be circumscribed when no wrong has been committed." Societe Comptoir De L'Indus., Etc. v. Alexander's Dept. Store, 299 F.2d 33, 35, 1 A.L.R.3d 752 (2d Cir. 1962); Speedry Products, Inc. v. Dri Mark Products, Inc., 271 F.2d 646 (2d Cir. 1959). In addition, in exercising its equity power, the court must weigh the equities, balancing conveniences and injuries. Interlego A. G. v. Leslie-Henry Co., Inc., 214 F.Supp. 238 (M.D.Pa.1963).

Plaintiffs produce a single product, while defendant distributes many. Plaintiffs have shown the likelihood that continuance of defendant's deceptive practices will cause irreparable injury in terms of loss of customers, goodwill, and reputation. This injury is likely to be compounded unless defendant is enjoined from continuing its activity.

Plaintiffs have also demonstrated probability of success on the trial of this action on its claim under Section 43(a) of the Lanham Act. The equities here favor the plaintiffs. A preliminary injunction will issue.

The motion to sequester is granted. Since there is no feasible way for the court to separate the sales which defendant made as a result of their improper practices from those which were made as a result of legitimate practices, and since it further appears that improper practices were used in all sales because defendant did not have, nor does it now have any properly functioning working models of its own, the court must enjoin the filling of all orders for defendant's signal lights taken prior to the date of this decree.