MATSUSHITA ELECTRIC CORPORATION OF AMERICA and Matsushita Electric Industrial Co., Ltd., Plaintiffs,

v.

SOLAR SOUND SYSTEMS, INC., et al., Defendants.

No. 74 Civ. 2879 (WCC).

United States District Court, S. D. New York.

Sept. 5, 1974.

Amster & Rothstein, New York City, for plaintiffs; Morton Amster, New York City, of counsel.

Friedman & Goodman, Brooklyn, N. Y., for defendants; Abraham Friedman, Brooklyn, N. Y., of counsel.

### OPINION

CONNER, District Judge:

This is an action under Section 43(a) of the Lanham Trademark Act of 1946, 15 U.S.C. § 1125(a), charging defendants with placing a false designation of origin on plaintiffs' portable radios and using them in soliciting orders for radios of similar appearance to be manufactured for defendants. The action is before the Court on plaintiffs' motion for preliminary injunction.

### I. The Relevant Facts

Plaintiff Matsushita Electric Corporation of America ("Matsushita USA") has for a number of years been the exclusive distributor in the United States of various electronic products, including portable radios, manufactured by plaintiff Matsushita Electric Industrial Co., Ltd. ("Matsushita Japan"), under the well-known trademark "Panasonic."

Matsushita Japan has made and sold in Japan a Model RF–877 "Cougar No. 7" AM/FM multiband portable radio housed in a dark grey molded plastic cabinet designed to resemble a military communications set—a style known generically in the trade as "technical" or "military look." The RF–877 has not yet been marketed in the United States, but Matsushita USA plans to include, as a principal item in its 1975 "Tech Series" line, a model designated as the "Tech 600," which will be produced by Matsushita Japan and which will be substantially identical to the RF–877 with only minor circuit changes to adapt it for the U.S. market. The "Tech 600" will be priced to retail at approximately $80.00.

To promote the "Tech Series" line, Matsushita USA has budgeted over one million dollars for advertising and promotion during the current year.

It has applied for a U.S. design patent on the appearance of the cabinet but no patent has yet been granted on that application.

Defendant Solar Sound Systems, Inc. ("Solar") is engaged in the business of marketing in the United States consumer electronic items imported from the Orient. Defendant Leon Harary ("Harary"), the President of Solar, on a trip to Tokyo in the fall of 1973, purchased two of the Model 877 radios, left one with a Japanese manufacturer for the purpose of making a lower-priced "copy" adapted for the U.S. market and brought the other back with him to the United States.

Molds for the plastic housing for the new Solar unit were not scheduled to be ready until July, 1974. In order to facilitate the solicitation of orders for the unit at the Consumer Electronics Show which was held in Chicago in late May 1974, Solar took the Model 877 unit which Harary had brought from Japan, removed plaintiffs' nameplate from the front panel, substituting a nameplate

bearing the "Solar" trademark and logo, scraped off the embossed lettering in Japanese on the back panel, and removed certain of the control knobs or changed the labeling thereon to reflect the contemplated changes in circuit functions. It then had the unit photographed, and had about 200 glossy prints of the photographs prepared, bearing captions identifying the unit as the Solar "Model #TR 7405—Super Deluxe 6 band military style portable" and "Model # TR 7406—same except AM/FM only." It also incorporated a small reproduction of the photograph, with similar captions, in a price list, of which it had 5,000 copies printed. The unit was priced to retail at approximately $29.50.

At the Chicago show, defendants displayed the altered specimen, and handed out to prospective buyers approximately 150 of the glossy prints and several thousand of the price lists.

Defendants received a number of orders for the Models TR 7405 and TR 7406, including one order for 4,000 units from Abraham & Straus, and about 16 smaller orders for a total of about 370 additional units. Solar has since notified Abraham & Straus that it will not fill its order, and has represented to the Court that it will not fill the other orders until a ruling is made on the present motion.

## II. The Applicable Law

Section 43(a) provides, in pertinent part:

> "Any person who shall affix * * * or use in connection with any goods * * * a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce * * * shall be liable to a civil action * * * by any person who believes that he is or

is likely to be damaged by the use of any such false description or representation."

█ It has repeatedly been ruled that the use of a photograph of another's product to advertise and sell one's own product constitutes a violation of Section 43(a). American Optical Co. v. Rayex Corp., 266 F.Supp. 342 (S.D.N.Y.1966); Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.), 261 F.Supp. 238 (S.D.N.Y.1966), and 266 F.Supp. 755 (S.D.N.Y.1965), aff'd, 360 F.2d 1021 (2d Cir. 1966); Zandelin v. Maxwell Bentley Mfg. Co., 197 F. Supp. 608, 611 (S.D.N.Y.1961); L'Aiglon Apparel v. Lana Lobell, Inc., 214 F.2d 649 (3d Cir. 1954).

█ Defendant's conduct here even more clearly satisfies Section 43(a)'s requirement of a "false designation of origin" because defendant did not merely photograph plaintiffs' unit and use that photograph in sales promotion, but modified that unit by affixing a "Solar" nameplate on it and used this misbranded specimen not only for the photographs but at the Chicago show. The use of a misbranded product in soliciting orders for a different product seems as clear a "false designation of origin" as could be conceived, and it was so ruled in Crossbow, Inc. v. Dan-Dee Imports, Inc., 266 F.Supp. 335 (S.D.N.Y.1967).

However, defendants argue that, in the present situation plaintiff is not entitled to relief for three reasons:

(1) because plaintiffs, having never sold in this country the particular product in question, have no standing to sue under Section 43 (a);

(2) because defendants did not cause the misbranded unit to "enter into commerce;" and

(3) because plaintiffs have not established that defendants' product will be inferior to that of plaintiffs.

None of these arguments is valid.

A. Plaintiffs' standing to sue.

Defendants' brief in opposition to the motion begins with a general analysis of

the Lanham Act, in which they argue that the scope of Section 43(a) is limited by the "statement of intent" contained in Section 45, 15 U.S.C. § 1127. That position is supported by the opinion in Colligan v. Activities Club of New York, Ltd., 442 F.2d 686, 691 (2d Cir. 1971), cert. denied, 404 U.S. 1004, 92 S. Ct. 559, 30 L.Ed.2d 557, in which the Court of Appeals for the Second Circuit, in commenting on the interpretation of Section 43(a), observed:

"The congressional statement of purpose of the Act is contained in § 45 * * *."

■ However, the statement of intent in Section 45 seems clearly broad enough to encompass the present situation. That portion begins:

"The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce * * *."

Defendants' misbranding of plaintiffs' product and their use of the misbranded product in soliciting interstate sales for their own product seems clearly a "deceptive and misleading use of marks in [interstate] commerce."

■ In arguing that Section 45 requires not only that defendants shall have used the misbranded unit in commerce, but also 'that *plaintiffs'* unit shall previously have been sold in commerce, defendants place principal reliance on the recent decision in John Lecroy & Sons, Inc. v. Langis Foods Ltd., 376 F. Supp. 962 (D.D.C.1974). In that case, the Court ruled that a Canadian company had no standing to register in the United States Patent Office trademarks which, although they had been used and registered in Canada, had never been used in the United States, because

"[i]n the United States, in contrast with some countries, the exclusive right to use a particular mark may arise only from its use in connection with the goods which the manufacturer wishes to distinguish." 376 F. Supp. at 967.

That fundamental principle of U.S. trademark law simply does not apply here, because this is not an action seeking to protect "the exclusive right to use a particular mark."

Defendants here are not charged with using plaintiffs' trademark on their goods. Instead, they are charged with doing just the opposite: using their trademark on plaintiffs' goods.

Thus, in an action under Section 43(a), there would be no logic in requiring that plaintiffs' exclusive right to a trademark shall have been established by previous use of the mark in commerce in this country—or even that plaintiffs have a trademark at all. It thus seems no mere oversight that Section 43(a) contains no such requirement. Instead, that section merely requires that defendants place a "false indication of origin" on goods and introduce or transport them in interstate commerce in this country. This they clearly did.

Defendants' reliance on Colligan v. Activities Club of New York, *supra*, is likewise unavailing. In that decision, the Court ruled that mere consumers have no standing to sue for alleged violation of Section 43(a), because the intent of the Lanham Act, as stated in Section 45, is "to protect persons engaged in such commerce against unfair competition."

Here plaintiffs are undeniably engaged in interstate commerce in this country. They are members of "a purely commercial class" and not merely representatives of the consuming "public." Although they have not yet sold here the particular model of portable radio which defendants misbranded, they have sold and are selling other portable radios, including the "Tech Series" of multiband receivers, and they have specific, already well advanced plans to include in this line next year the very model in question.

We cannot believe that Section 43(a) was intended to afford no protection in such a situation, and we are unwilling to be the first court to read into that sec-

tion the limiting requirement that the plaintiffs shall already have sold in this country the particular product which the defendant has misbranded.

B. Defendants' introduction and transportation of the misbranded goods in interstate commerce.

■ Defendants' argument that they did not cause the misbranded goods to "enter into commerce" gives us less pause. Although defendants did not sell the misbranded unit or even offer it for sale, they did use it in the solicitation of interstate sales, not only by distributing prints of a photograph of it and price lists incorporating reproductions of such photograph, but also by displaying the misbranded unit itself at the Solar booth at the Chicago show.

In each of the *American Optical, Ideal Toy, Zandelin,* and *L'Aiglon* decisions cited hereinabove, the courts ruled that the defendant's use of photographs of plaintiff's product in soliciting sales of defendant's products was a violation of section 43(a). And in *Crossbow, supra,* the Court ruled that the display of a misbranded product itself was a violation of section 43(a).

■ It is true that in none of those cases did the Court specifically discuss the question whether by use the defendant had caused the falsely designated goods to "enter into commerce." However, it seems clear that the solicitation of sales is "commerce" within the intent of section 43(a), particularly where, as here, such solicitation actually results in interstate orders. To rule that solicitation of sales is not "commerce" would appear to leave the federal government powerless to prevent fraudulent interstate advertising.

Any such interpretation would undoubtedly startle the experts who have expressed the view that "[a]ll false advertising is within the reach of the section * * * ; any deceptive arrangement is equally prohibited." I Callman, Unfair Competition, Trademarks and Monopolies, § 18.2(b), p. 622 (3d Ed. 1967).

■ Moreover, defendants have overlooked the fact that Section 43(a) prevents not only causing a false designation of origin to "enter into commerce" but also causing it "to be transported or used in commerce." Here defendants undeniably caused the misbranded unit to be "transported" in interstate commerce in order to reach the Chicago show, where it was "used" in soliciting sales. Thus Section 43(a) was clearly violated, whether or not the misbranded unit itself was caused to "enter into commerce."

Judge Tenney's decision in Blazon, Inc. v. DeLuxe Game Corp., 268 F.Supp. 416 (S.D.N.Y.1965), on which defendants rely, is not apposite here. There the defendants did not transport a misbranded product in interstate commerce. Indeed, they did not misbrand plaintiff's hobby horse at all. They merely removed and repainted the polyethylene body and mounted it in a frame to show how their own body, which was displayed in the form of a solid plaster model (itself too heavy for mounting in the frame) would look and move when assembled in the frame.

There was thus no "false designation of origin," as there was in the present case.

C. The absence of proof of the inferiority of defendants' product.

Defendants' final argument has even less color of merit.

■ Defendants argue that since, under the doctrine of such cases as Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), plaintiffs had no proprietary right in the unpatented design of their RF–877 unit, defendants were free to copy it line-for-line unless plaintiffs can sustain the allegations of their Complaint that defendants' unit is "of inferior construction, styling, appearance and workmanship."

Surprisingly, that argument concedes too much. Under *Sears* and *Compco,* plaintiffs could not prevent the copying of their unpatented design (at least where defendants have not "palmed off" their product as plaintiffs'), *even if* they could show that defendants' product was inferior.

But in this action plaintiffs are not attempting to prevent copying of their design in defendants' product. Instead they are seeking to prevent defendants' use in commerce of *their* product bearing defendants' brand—a clear violation of Section 43(a).

### III. The Appropriate Relief

Section 43(a) does not specify the type of relief which the courts might grant to successful plaintiffs in actions brought thereunder, and it is questionable whether the remedies sections of the Lanham Act are applicable to violations of Section 43(a). See Germain, Unfair Trade Practices under Section 43(a) of the Lanham Act, 49 Indiana L.J. 84, reprinted at 64 T.M. Reporter 193 at 213, 221. However, the courts have repeatedly granted preliminary injunctions restraining, *pendente lite,* further use of misleading indicia of origin, and have cancelled all orders taken during the time the misleading indicia were in use. See, e. g., Crossbow, Inc. v. Dan-Dee Imports, Inc., *supra,* 266 F.Supp. at 339.

■ This Court has no doubt that defendant should immediately be enjoined from:

(1) displaying to potential customers a product of plaintiffs which bears a trademark or trade name of defendants or which is displayed in such manner as to create the impression that it is a product of defendants;

(2) distributing photographs, catalogs or price lists containing a reproduction of a product of plaintiffs which either bears a trademark or trade name of defendants or which is otherwise presented so as to create the impression that it is a product of defendants;

(3) filling any orders for the Model TR 7405 and/or TR 7406 which were received at the Consumer Electronics Show in Chicago in May 1974, or thereafter up to the present date.

The only difficult question is how long the ban against accepting orders for the TR 7405 and TR 7406 should be continued in order to purge the effects of defendants' violation of Section 43(a). Plaintiffs urge that defendants should be permitted to accept no orders until the Consumer Electronics Show in June of 1975.

That seems unduly punitive. The Court considers it more appropriate merely to require:

(4) that defendants send a written notice to each of the customers from whom it has heretofore received orders for the TR 7405 and/or TR 7406, notifying them that the orders have been cancelled because defendants are not able to supply the particular unit shown in defendants' sales literature, and that Solar will notify the customer when it will be in a position to furnish a unit of generally similar appearance which is now going into production; and

(5) that defendants refrain from contacting these customers again or soliciting orders for the TR 7405 and TR 7406 until such time after October 1, 1974, when defendants shall have prepared and shall furnish to the prospective customers photographs and/or price lists showing a fully operative prototype of the actual unit which defendants will supply.

The latter limitation should entirely eliminate the time advantage which defendants achieved by the use of plaintiffs' misbranded unit.

The foregoing constitutes the Court's findings of fact and conclusions of law, as required by Rule 52(a), F.R.Civ.P. Plaintiffs may submit a proposed formal order on reasonable notice to defendants.