AMERICAN OPTICAL COMPANY and
C'Bon, Inc., Plaintiffs,

v.

RAYEX CORPORATION and Monaco
Optical Corporation, Defendants.

No. 66 Civ. 1633.

United States District Court
S. D. New York.

June 28, 1966.

Amster & Rothstein, New York City, Morton Amster, New York City, of counsel, for plaintiffs.

A. J. Nydick, New York City, for defendants.

## OPINION

TENNEY, District Judge.

This motion is to enjoin certain alleged activities of the defendants herein. Jurisdiction of the Court is based on Sections 39 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1121, 1125(a), as well as diversity of citizenship.

The activity involved is the alleged use by defendants, in their sunglass cata-

logue, of a photograph of plaintiffs' higher quality sunglass in connection with sales of its * (defendants') inferior quality glass.

Plaintiff American Optical Company has, for the past twenty-five years, manufactured and sold sunglasses and lenses therefor. Plaintiff C'Bon, Inc. (hereinafter referred to as "C'Bon") is a wholly-owned subsidiary and was created in 1965 for the purpose of creating, promoting and selling a quality line of high-style sunglasses.

Defendants Rayex Corporation and Monaco Optical Corporation are also in the sunglass field, and while the sunglass products listed in the catalogue are primarily directed toward the ski enthusiast, I find sufficient relationship between the products of plaintiffs and defendants so that they are in competition. (A reading of plaintiffs' advertising material reveals a "year-round" appeal.)

Involved herein is plaintiff C'Bon's Camelot style sunglass (hereinafter "Camelot"), photographs as well as samples of which were submitted at the hearing. Camelot is an expensive ($17.-50) wrap-around, year-round sunglass with distinctive styling and is averred to be the best selling line of C'Bon. Suffice it to say that it is a better quality sunglass than defendants' (the Alpine model sells for $9.95, and to the inexperienced eye its styling is not as chic and smooth as Camelot's).

In defendant Rayex Corporation's catalogue circulated in December of 1965, there appears a photograph of sunglasses identified as its Alpine style No. 1011. It is this photograph upon which plaintiffs predicate the requested relief.

Section 43(a) of the Lanham Act in pertinent part provides:

"(a) Any person who shall * * * use in connection with any goods * * any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods * * to enter into commerce, and any person who shall with knowledge of the falsity of such * * * description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action * * * by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

There is no dispute that the items herein entered interstate commerce.

Plaintiffs contend that this picture of defendants' Alpine style No. 1011 is in fact a photograph of their Camelot style. A visual comparison of the catalogue picture with plaintiffs' Exhibit 4-A and a comparison of plaintiffs' Exhibit 7 with plaintiffs' Exhibit 8-A reveals, at least in a prima facie manner, if not conclusively, that the catalogue picture is indeed a photograph of the Camelot. The affidavit of Mr. Agraz, a commercial photographer, his comparison of the various exhibits and his method of comparison are most persuasive and are in no way dispelled by counterbalancing evidence.[1]

Defendants, in opposition, assert that they never used a photograph of plaintiffs' sunglasses to sell their Alpine model (presumably in the catalogue); they further assert that they, independently of plaintiffs, produced a "handmade prototype" of their glasses, from which they photographed the picture in the catalogue. This prototype, however, has not been produced, nor has the photograph of the prototype that was turned over to the printer. There is no affidavit of Harvey Dressner, who photographed the prototype nor any affidavit of the printer. Accordingly, it is difficult on such an insufficient showing to credit de-

---

* The catalogue is printed by the Rayex Corporation. Exhibit 5–b, the actual Alpine model, has "Monaco Optical" stamped on its price tag.

1. Pg. 4. The difference in lens color is irrelevant as the issue herein is whether defendants used plaintiffs' product (distinctive frame) in advertising their (defendants') product.

fendants' story that a prototype ever existed. Indeed, the comparison of the photographs reveals that not only was the prototype, if it existed, "dimensionally the same as plaintiffs' Camelot glass" (Tunkel affidavit ¶ 3), but it must have been an exact replica. Absent some substantiation of this averment I am unable to accept its veracity on the within application.[2]

Accordingly, I believe the evidence to be sufficient preliminarily to justify a finding that the catalogue photograph is the "Camelot", and that therefore defendants have committed a wrong[3] by using a photograph of plaintiffs' product to sell their own inferior quality product and indeed filling orders with models different from that pictured in the catalogue.

Initially, there was some question in my mind as to whether plaintiffs' application was precluded by laches. However, in supplemental papers plaintiffs have sufficiently shown due diligence in securing the requisite information so as to dispel this problem.

It also appears that defendants have prepared a new catalogue properly depicting the Alpine model. That such is the case does not, of course, cure the present wrong, and while defendants may send out the other catalogue all copies of the catalogue involved herein should be forthwith withdrawn and not used.

All bills for orders filled up to this date are to be segregated so that when the action is tried on the merits the Court will be able to more easily ascertain the sales attributable to the catalogue. Orders *submitted* and filled *after* the new catalogue is circulated will not be enjoined but all orders filled within a sixty-day period from the date that the new catalogue is circulated are to be segregated as well. All orders as of this date which are not filled shall be enjoined and returned to the buyer, and no orders on the said Alpine model are to be filled until the new catalogue has been sent out and directions given to destroy the old catalogue.

The Court, however, will not enjoin the sale of the actual Alpine glasses properly denominated and pictured as such in a new catalogue, since the actual Alpine glasses (plaintiffs' Exhibits 5-A and 5-B) are not similar to the Camelot. (See Carlson Affidavit ¶ 3.)

The findings of fact and conclusions of law, as required by Rule 52(a), are contained herein.

Settle order along the lines of that settled in Surrey, supra, no later than 4:00 P. M., June 30, 1966, on one (1) day's notice, suggesting the amount of security under Rule 65(c).

2. Pg. 4. Moreover, even accepting that which defendants state, they concede that their prototype was "dimensionally the same" as plaintiffs', that one of the European manufacturers stated that he was about to begin the manufacture of a glass of the "same style as the Camelot glass", and that defendants ordered 2,000 of these frames. Thus, coincidentally, since the prototype was dimensionally the same as the Camelot, and the order was for the Camelot frame, the photograph in the catalogue looks as if it is a photograph of the Camelot. However, while the advertised picture is either the Camelot itself or that which is identical to the Camelot, the Alpine sunglass that was ultimately sold to fill the order was dissimilar in certain obvious respects, both in overall visual impression and in specific detail. (See Carlson Affidavit ¶ 3.)

3. Pg. 5. See, e. g., National Dynamics Corp. v. John Surrey, Ltd., 238 F.Supp. 422, 423 (S.D.N.Y.1963) and cases therein cited; cf., Mastro Plastics Corp. v. Emenee Indus. Inc., 16 A.D.2d 420, 228 N.Y.S.2d 514 (1st Dep't), aff'd without opinion, 12 N.Y.2d 826, 236 N.Y.S.2d 347, 181 N.E.2d 360 (1962) (Granting leave to replead under Section 43(a)), 19 App.Div.2d 600, 240 N.Y.S.2d 624 (1st Dep't 1963) (Mem.), aff'd without opinion, 14 N.Y.2d 498, 248 N.Y.S.2d 223 (1964); see generally, Blazon, Inc. v. De Luxe Game Corp., 268 F.Supp. 416 (S.D.N.Y. 5/11/65, per Tenney, J.); see also Glenn v. Advertising Publications, Inc., 251 F.Supp. 889 (S.D.N.Y. 3/2/66, per McLean, J.).