**SUBLIME PRODUCTS, INC., Plaintiff,**

v.

**GERBER PRODUCTS, INC., et al., Defendants.**

**No. 83 Civ. 8678 (RO).**

United States District Court,
S.D. New York.

Feb. 2, 1984.

Stephen E. Feldman, New York City, for plaintiff.

Robert L. Sherman, Mineola, N.Y., for defendants.

## OPINION AND ORDER

OWEN, District Judge.

This is an action pursuant to section 43(a) of the Lanham Trademark Act of 1946, 15 U.S.C. § 1125(a) and New York law of unfair competition and trade secrets. Defendants are charged with using photographs and samples of plaintiff's lamps to solicit customers for their own forthcoming copies of the lamps. Plaintiff additionally claims that defendants' planned lamp production is premised on trade secrets and know-how wrongfully misappropriated by defendant from plaintiff in the course of negotiations to buy the company. The action is before me on plaintiff's motion for a preliminary injunction.

The subject of this action is a lamp whose shade is based on the shape of an English charwoman's hat. Plaintiff has been selling the lamps in this country for

several years under what it states to be an exclusive license from the British originator, Sublime Lighting, Ltd. In the spring of 1982, defendants began discussions with plaintiff to explore the possibility of acquiring plaintiff's company. In the course of several meetings, defendants' personnel allegedly received information about plaintiff's manufacturing processes, suppliers, customers and financial state. Plaintiff states that all this was provided under an understanding that strict confidentiality was to be maintained. Defendants also received, at their request, samples of plaintiff's lamps. Negotiations broke down in June, 1983, but the samples were not returned.

In November, 1983, at least one of the lamp samples resurfaced at a trade show, on display at defendants' booth. After plaintiff complained, the lamp was removed, but was replaced by photographs of plaintiff's product. Throughout the show, defendant solicited orders based on displays of samples and brochures that featured plaintiff's lamps and bases. Lamps were to be available in six months. Defendant's advertising includes photographs of lamps that appear to be plaintiff's, but are offered for sale as defendant's product. Plaintiff brought this action to enjoin what it viewed as unfair competition. Defendant has submitted affidavits which contest the motivation for, but not the truth of, the events set forth above.

By this motion, plaintiff seeks to enjoin defendant from using photographs or samples of plaintiff's lamps to solicit orders for its own product. Plaintiff also claims trademark rights in the shape of the shade and therefore requests that the court enjoin copying of it.[1] This request is additionally based on the assertion that defendant's ability to copy the lamp is derived from its misappropriation of the trade secrets that plaintiff divulged for the limited purpose of furthering the proposed takeover deal. Finally, plaintiff seeks return of the shades and bases lent to defendant for

---

1. Plaintiffs have not pursued a copyright action here. Apparently, no copyright has been filed.

*Cf. Mazer v. Stein,* 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954).

inspection during past discussions, and thereafter wrongfully used to solicit trade for defendant. Plaintiff's action for damages and an accounting need not be reached at this stage of the litigation.

Defendants have suggested a possible defect in service, which was made at the New York showroom of defendant Reliance Products, the Gerber subsidiary in charge of marketing the offending lamps. The Gerber name appears prominently on the door of that office, and Gerber has certainly received actual notice. The record seems to support permitting this action to continue as presently constituted. No formal notice to dismiss has been submitted, nor would one seem warranted.

■ Before a preliminary injunction can be granted, the movant has the burden of demonstrating:

> possible irreparable injury *and* either 1) probable success on the merit *or* 2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party request the preliminary relief.

*Caulfield v. Board of Education,* 583 F.2d 605, 610 (2d Cir.1978). The merits of each claim will be considered separately.

### The Deceptive Advertising Claim

Defendants' advertising contains photographs of lamps that seem to be plaintiff's own. Defendants have not denied this, but merely tried to establish that the inclusion was inadvertent. Likewise, however, they have not disputed plaintiff's contention that defendants could not have photographed its own lamps, for obviously they had none to photograph. Defendants must have known, then, that their publicity featured plaintiff's product under defendant's name.

■ It is well established that using a photograph of another's product to sell one's own cheaper product is unfair competition under Section 43(a). *L'Aiglon Apparel v. Lana Lobell,* 214 F.2d 649 (3d Cir.1954); *American Optical v. Rayex Corp.,* 266 F.Supp. 342 (S.D.N.Y.1966). Defendants here have not denied photographing plaintiff's product for use in their own catalogue. Nor have they yet, apparently, manufactured a similar product of their own. It is not possible, therefore, to determine whether defendants' product will be inferior to plaintiff's, *cf. supra, L'Aiglon; American Optical,* but it is clear that defendants are not yet prepared to deliver a product identical to the one pictured. To advertise availability of that product is, therefore, misleading.

■ Because defendants offer their lamp at approximately half the price of plaintiff's there is a substantial likelihood that business will be diverted by virtue of this deceptive advertising. And because plaintiff does not have a diverse product line, as does defendant, but sells primarily this one product, the risk of harm that may result from continuation of the deceptive practice is substantial. *Crossbow, Inc. v. Dan-Dee Imports,* 266 F.Supp. 335, 341 (S.D.N.Y. 1967). I therefore enjoin all further advertising using photographs of plaintiff's lamps. Defendant is to withdraw all such catalogues and notify its customers that all orders based on that advertising and not filled as of the date of this order are cancelled.

Defendant's use of plaintiff's lamps to solicit orders is similarly deceptive. *Matsushita Electric v. Solar Sound Systems,* 381 F.Supp. 64 (S.D.N.Y.1974). Defendants falsely represented to prospective customers that plaintiff's lamp was of defendant's own manufacture, undertaking to supply such lamps for sale. This it was not yet prepared to do. It is further unfair for defendant to take advantage of plaintiff's product development and goodwill to usurp a share of the market.

Defendants' misbranding of plaintiffs' product and their use of the misbranded product in soliciting interstate sales for their own product seems clearly a "deceptive and misleading use of marks in (interstate) commerce."

*Matsushita, supra* at 68. (applying purpose of Lanham Act)

Defendants' conduct with respect to the lamp samples is clearly violative of Section 43(a).[2] They are hereafter enjoined from soliciting orders using plaintiff's lamps as samples. Defendants are further ordered to return all lamps lent to them by plaintiff during the previous takeover negotiations.

### The Copying Claim

 Plaintiff also seeks to enjoin copying of the lamp shades. Its first ground is a claim of trademark infringement under the false designation of origin leg of Section 43(a). To do this, it must first establish that the lamp share is nonfunctional. It must then demonstrate that the copied features of the shade—the shape—have acquired secondary meaning. *Vibrant Sales, Inc. v. New Body Boutique, Inc.*, 652 F.2d 299, 303 (2d Cir.1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982). Even assuming that the *shape* of the shade might be considered non-functional, plaintiff has not made an adequate showing that the appearance and advertising of the product have been sufficient to "indicate its origin to the typical customer." *Id.* at 304. Plaintiff asserts the popularity of its product and its advertising campaign designed to associate the shape with the manufacturer ("Mobcaps are Sublime"), but the record at this point does not present a strong enough showing of "probable success on the merits" to justify such

drastic protection of an unregistered trademark.[3]

While I feel obliged to I dismiss this claim, I do so with reluctance, because of the devious conduct of defendant to get a "free ride" based on plaintiff's efforts to develop a market for its product. But this inequity is overbalanced by the preference of the Lanham Act to encourage competitors, even slavish copiers, for the greater public good. See *Gemveto Jewelry Co., Inc. v. Jeff Cooper, Inc.*, 568 F.Supp. 319, 334 (S.D.N.Y.1983). To avoid confusion in the marketplace, I order that defendants label their products clearly to differentiate them from those of plaintiff. This seems to me a minimum requirement to assure a clear indication of origin.[4]

### The Trade Secret Claim

 Plaintiff also, and alternatively seeks to enjoin defendants' copying the shade based on allegations of misappropriation of trade secrets. To prevail on that claim, plaintiff must show

... that a confidential relationship existed between plaintiff and defendant, that disclosures of what amounted to trade secrets were made by plaintiff to defendant, and that defendant made use of those disclosures.

*Heyman v. A.R. Winarick, Inc.*, 325 F.2d 584, 586 (2d Cir.1963). To date, plaintiff has not met this burden, having submitted affidavits asserting disclosures in the

---

**2.** I note that defendant's arguments concerning functionality and absence of secondary meaning are inapposite here. Functionality and secondary meaning are irrelevant to actions under Section 43(a) for false description or representation. *Vibrant Sales v. New Body Boutique*, 652 F.2d 299, 303 n. 3 (2d Cir.1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982).

**3.** Plaintiff points to *in re Ovation Instruments*, 201 U.S.P.Q. 116 (1978) as exemplar of trademark protection accorded to the non-functional shape of a functional object. There, however, the manufacturer, in an *ex parte* registration proceeding, was able to show years of marketing and advertising designed to associate the product's shape and its source. Here, plaintiff's assertion that it has marketed the lamp under the slogan, "Mobcaps are Sublime" is supported

only by the catalogues appended to its later submissions to this court. Earlier submitted advertising specimens lack that slogan. Without a stronger showing, the aesthetic aspects of goods sold in the decorative industries are not subject to design monopoly. R. Callman, *Unfair Competition Trademarks & Monopolies*, § 19.35, 148–53 (4th ed. 1983).

**4.** Plaintiff argues that under New York law, secondary meaning is not required if the defendant is shown to have intentionally copied trade dress for in such a situation the likelihood of confusion to the public will be assumed. *E.g., Perfect Fit Industries v. Acme Quilting*, 618 F.2d 950, 953 (2nd Cir.1980). This is not, however, a trade dress situation, but one of product simulation.

252

course of a trust relationship and subsequent misuse of those matters. Defendants dispute both confidentiality and substance of discussions with plaintiff. Therefore, fact issues remain to be resolved before the trade secret claim can be disposed of. A hearing for that purpose will be held on February 21, 1984 at 10:00 a.m. in Courtroom 128. The stay is continued pending outcome of this hearing.

The foregoing is so ordered.