**TOWLE MANUFACTURING COMPANY and Galway Crystal, Ltd., Plaintiffs,**

v.

**GODINGER SILVER ART CO., LTD., Defendant.**

**No. 85 Civ. 3153 (LBS).**

United States District Court, S.D. New York.

July 2, 1985.

Frankfurt, Garbus, Klein & Selz, New York City, for plaintiffs; Richard Kurnit, Edward H. Rosenthal, New York City, of counsel.

Stiefel, Gross, Kurland & Pavane, New York City, for defendant; Martin B. Pavane, New York City, of counsel.

## OPINION

SAND, District Judge.

## I. INTRODUCTION

Plaintiffs Towle Manufacturing Co. and its wholly-owned subsidiary, Galway Crystal, Ltd., (hereinafter "Galway" or "plaintiff") are currently engaged in the manufacture and sale of glassware and crystal items; one of their products, a decorative mouthblown and hand-cut crystal baby bottle ("Galway baby bottle"), is the subject of this litigation. Defendant Godinger Silver Art Co., Ltd. ("Godinger") manufactures and distributes items of glassware and silver, one of which is a pressed glass, machine-made decorative baby bottle ("Godinger baby bottle"). The plaintiff's Complaint, filed on April 24, 1985, alleges that Godinger has infringed plaintiff's copyright in the Galway baby bottle by its conscious copying and distribution of a baby bottle virtually indistinguishable from Galway's; that Godinger has infringed plaintiff's trademark "Shannon" by marketing its baby bottle in a dark green box similar to plaintiff's with the unauthorized use of the

mark "Shannon" on it; and that Godinger has engaged in unfair competition and palming off under the Lanham Act, 15 U.S.C. § 1125(a) (1982) as well as under state law. The complaint, alleging that there is no adequate remedy at law, seeks to enjoin Godinger from further copyright and trademark infringement. The complaint also seeks an accounting for all of Godinger's profits from the sale of its infringing goods, as well as punitive damages, the treble amount of plaintiff's actual damages, and attorneys' fees. Upon application of an order to show cause, the Court granted a temporary restraining order following a hearing on April 24, 1985. The Court held a combined hearing on the preliminary injunction and on the merits on April 26, 1985, pursuant to Fed.R.Civ.P. 65(a)(2), after which the temporary restraining order was lifted. The following constitutes the Court's findings of fact and conclusions of law on the preliminary injunction and on the merits.

## II. FACTS

In April of 1984, plaintiff Galway displayed its baby bottle, with copyright notice affixed, at a trade show; it subsequently began an extensive advertising campaign in August of 1984 to promote the sale of its bottle, and to date has spent approximately $75,000.00 to this end. Galway's witnesses testified that the company has restricted its sales to "upmarket" department stores and giftware retailers, and has sought to promote a future market for its baby bottle by utilizing a sales technique in which demand outpaces supply. Galway products, including its baby bottle, are made in Ireland, and they enjoy a sustantial market in the United States. The first shipment of Galway baby bottles arrived on retail shelves in the United States in the fall of 1984, according to plaintiff's testimony. Galway estimates that, to date, approximately 15,000 of its bottles have been shipped to the United States, with orders for approximately 10,000 additional bottles outstanding at the time of trial.

Although Galway and Towle, according to testimony, do not seek copyright or trademark protection for their crystal designs on a regular basis, they have made efforts at protecting some new designs since 1982, at which time Galway was taken over by Towle. In April of 1984, Towle's in-house counsel wrote a memo to William Tobin, the managing director of Galway Crystal, Ltd. in Ireland, describing the importance of obtaining copyrights and trademarks for new designs, and urging Galway to provide Towle with the documentation required to protect its original designs slated for distribution in the United States.

Tobin testified that he asked Galway's plant manager to order and affix labels to its baby bottle bearing the proper copyright designations near the words "Galway Irish Crystal." However, in April of 1985, shortly after plaintiff became aware of the existence of Godinger's baby bottle, Tobin discovered that the first shipment of Galway bottles had gone to the United States "through mistake and inadvertence" (Tobin Affidavit) without the proper labels bearing the circled C designation. He testified that he attempted to remedy this situation by making sure that subsequent shipments of the bottle to the United States contained the proper labels, and by contacting Towle's trademark counsel. According to the latter's testimony, Towle took prompt action upon discovery that defendant's baby bottle was on the market. Its actions included filing a registration form for the Galway bottle's design with the copyright office on April 10, 1985; sending telegrams and letters to Godinger on April 16, 1985, ordering it to cease and desist from further infringement of Galway's rights in its bottle; and writing to salespeople in the United States on April 23, 1985, enclosing labels bearing the circled C and requesting that these be affixed personally by Galway's employees. Shortly thereafter, upon Godinger's refusal to cease the manufacture and sale of its baby bottle, Galway and Towle filed the instant action. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), (b) (1982) and 15 U.S.C. § 1121 (1982).

Arnold Godinger, the president and chief executive officer of Godinger, testified that he first observed silver-topped plain glass baby bottles at a trade show in Italy in 1983. He stated at trial that he spoke to the manufacturer of the bottle regarding the design and marketing of a more decorative bottle made of cut instead of plain glass and with a similar silver top. Samples of the Italian bottles arrived at his office in the United States in early 1984. Prior to his taking any further steps in designing or manufacturing a decorative bottle, Godinger testified that he saw an advertisement picturing the Galway bottle in a magazine in August of 1984. He sent this advertisement to manufacturers in Germany and Japan, instructing them to make "very similar" samples in pressed instead of hand-cut glass and of slightly larger size. Godinger purchased a Galway bottle in Chicago in November of 1984, which he later brought to the German manufacturer from whom he had previously requested samples. Godinger ultimately decided, however, to have its bottles manufactured in Japan.

Godinger described the particular cuts or designs on the Galway bottle as "traditional," and introduced evidence that the same designs, in similar configurations, have been utilized by numerous glassware manufacturers on numerous items for a long time. Godinger's testimony indicated that, given the popularity and prevalence of these patterns in crystalware, he felt "comfortable" utilizing the same combination of cuts on his own version of a decorative baby bottle. Accordingly, after he had seen Galway's advertisement and the bottle itself, Godinger directed a Japanese company to manufacture a baby bottle from the sample it had made up earlier. The record does not indicate the precise date on which the Godinger bottles arrived in the United States and were shipped to retailers; nevertheless, it is uncontroverted that a major New York "upmarket" retailer sells Godinger bottles and has recently advertised them in its catalogue, and a number

of Godinger bottles are currently on order for other retailers as well.

Plaintiff Galway contends that the sale of Godinger bottles in an "upmarket" retail store, combined with the close similarity in appearance and trade dress of the two bottles and the resulting likelihood of confusion of the products, should lead to the imposition of liability on Godinger. At trial, defendant's president agreed to discontinue use of the green box and the name "Shannon," and further agreed to place defendant's name on the box in which the bottle is sold, thus eliminating the need for further consideration of the issue of trademark infringement. The issues remaining for resolution in this proceeding include plaintiff's copyright infringement and unfair competition claims under federal and common law. For the reasons discussed below, this Court denies plaintiff's requests for injunctive relief, damages and attorneys' fees.

## III. DISCUSSION

### A. Copyrightability of Plaintiff's Design

At the outset, the Court must determine whether plaintiff's design is entitled to copyright protection, since an action for copyright infringement such as plaintiff's cannot be maintained in the absence of ownership of a valid copyright. *American Greetings Corp. v. Easter Unlimited, Inc.*, 579 F.Supp. 607, 613 (S.D.N.Y.1983). Plaintiff does not, and indeed cannot, claim copyright protection for the idea of a decorative baby bottle. *See Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir.) ("It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself."), *cert. denied*, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976). (Indeed, Waterford, another manufacturer of Irish hand-cut crystal, has a similar product on the market not challenged by plaintiff). Rather, plaintiff claims that its particular combination of design elements, consisting of five different styles of glassware cut-

tings on its bottle, is copyrightable. Plaintiff has characterized its bottle as an original work both in its copyright application and at trial. Defendant Godinger, however, contends that Galway, by utilizing a series of well-known cuttings that exist in the public domain, has designed a work that is not subject to copyright protection, so that Godinger would incur no liability by copying the design. As an alternative, Godinger states that, at most, plaintiff has designed a derivative work subject to limited copyright protection, and that by characterizing its work as original rather than derivative on its copyright application, it has committed fraud on the Copyright Office.

The general view in the case law is that " 'the one pervading element prerequisite to copyright protection regardless of the form of the work' is the requirement of originality—that the work be the original product of the claimant." *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 489–90 (2d Cir.), *cert. denied*, 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976), quoting 1 M. Nimmer, Nimmer on Copyright § 10, at 32 (1975 ed.). The element of originality has also been described as the *"sine qua non* of copyrightability." *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir.1980). Although independent creation is necessary to establish originality, "there need not be invention in the sense of striking uniqueness, ingeniousness, or novelty," *Batlin*, 536 F.2d at 490; the degree of originality required has been described as "modest", "minimal", and at a "low threshhold." *Durham*, 630 F.2d at 910 (quoting *Batlin*, 536 F.2d at 490).

It is evident that plaintiff Galway, in designing its baby bottle with a particular arrangement of preexisting cutting designs in the public domain, has failed to meet even the modicum of originality necessary for copyrightability. The numerous exhibits presented at trial make it clear that each of the five glassware cuttings utilized by Galway in its baby bottle design is in common usage in the glassware and crystal industries, and each has apparently been so

for a long period of time. Significantly, the box in which plaintiff's bottle is marketed bears the designation "Leah;" this may be viewed as a tacit acknowledgement by Galway that its bottle is patterned after the uncopyrighted and preexisting Leah style. Indeed, plaintiff concedes that the design of its bottle consists of several of the same patterns of cuttings as Leah line glassware, with the addition of a flattened oval pattern at the base of the bottle and a star design on the bottom. The exhibits presented at trial indicate that both the oval and star patterns are in common usage in the glass and crystalware markets as well.

Nevertheless, the mere borrowing of elements from previous works will not defeat copyrightability as long as the author has devised a new version of the work or has otherwise rearranged or transformed it so as to have made an original contribution. 1 M. Nimmer, Nimmer on Copyright § 3.01, at 3–10 (1985 ed.). Viewing plaintiff Galway's design as a whole, however, this Court holds that Galway has not utilized preexisting design elements in a sufficiently original manner to warrant copyright protection. It has, instead, mere-

ly placed a number of common glassware cuttings on its bottle in an apparently common configuration without significant changes or additions. Thus, in the absence of original contribution by Galway, this Court holds that its baby bottle design does not warrant copyright protection. *See Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir.1980) (where there is "no independent creation, no distinguishable variation from preexisting works, [and] nothing recognizably the author's own contributions," copyrightability does not exist).[1]

## B. *Copyright Infringement*

The two essential elements of a copyright infringement action are (1) plaintiff's ownership of a valid copyright, and (2) defendant's copying of plaintiff's work. *American Greetings*, 579 F.Supp. 607, 613 (S.D.N.Y.1983). Since the Court finds that plaintiff does not hold a valid copyright, the plaintiff is unable to prevail on a claim of copyright infringement.[2] This is so in spite of Galway's ample and essentially uncontroverted evidence and Godinger's testimony that Godinger did copy its work.[3]

1. Defendant Godinger contends that, even if plaintiff's design were copyrightable, its registration with the Copyright Office is invalid because Galway fraudulently characterized its work as original rather than derivative on its application. However, since Godinger has shown that plaintiff's lack of originality of design has defeated copyrightability, the Court need not reach the issue of fraud on the Copyright Office as a basis for invalidating Galway's copyright registration.

2. Galway has made an additional claim based on its position that the bottle design is copyrightable. It states that although it failed through mistake and inadvertence to place labels bearing the circled C on its baby bottles, it cured this unintentionally defective notice by making reasonable efforts to correct within five years of first publication, as required under 17 U.S.C. § 405(a)(2) (1982). *See Shapiro & Son Bedspread Corp. v. Royal Mills Associates*, 764 F.2d 69, 73, 74–75 (2d Cir.1985) (where plaintiff made efforts to protect its design all along by including defective notice in its packaging, where omission of proper notice was inadvertent, and where plaintiff took prompt action to relabel goods in its inventory upon discovery of

defect, court held plaintiff satisfied requirements of reasonable efforts under § 405(a)(2)). Galway claims that since it has fulfilled the requirements under the statute, copyright protection for its design remains intact despite the appearance on retail shelves of bottles without copyright notice. However, the Court need not decide the issue of reasonableness of plaintiff's efforts to correct defective notice in light of its holding that plaintiff's design is in the public domain. *See* discussion of copyrightability at p. 6, *supra*.

3. "[C]opying may be proved circumstantially by showing that the defendant had access to the copyrighted work and that the two works are substantially similar ... The defendant may then rebut this showing by demonstrating independent creation of the challenged work." *American Greetings*, 579 F.Supp. at 613. Galway contends, and Godinger does not deny, that the two baby bottles bear substantial similarity in appearance; at a distance of a few feet, as well as in photographs, they are virtually indistinguishable. In addition, Arnold Godinger testified that he mailed a copy of an advertisement of Galway's bottle to Japan, with instructions to manufacture samples varying only slightly from

A work such as plaintiff's, which does not enjoy copyright protection, is "in the public domain and can be copied in every detail by whoever pleases." *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 236, 84 S.Ct. 779, 781, 11 L.Ed.2d 669 (1964). Moreover, imitation such as defendant's has been described as "the life blood of competition ... that permits the normal operation of supply and demand to yield the fair price society must pay for a given commodity." *Gemveto Jewelry Co., Inc. v. Jeff Cooper, Inc.*, 568 F.Supp. 319, 334 (S.D.N.Y.1983) quoting *American Safety Table Corp. v. Schreiber*, 269 F.2d 255, 271–72 (2d Cir.), *cert. denied*, 361 U.S. 915, 80 S.Ct. 259, 4 L.Ed.2d 185 (1959). Thus, even "slavish copying of a well-marketed product," *Gemveto*, 568 F.Supp. at 334, is not actionable so long as plaintiff's design is in the public domain. *See also Sublime Products, Inc. v. Gerber Products, Inc.*, 579 F.Supp. 248, 251 (S.D.N.Y. 1984) (inequity of allowing defendant "to get a 'free ride' based on plaintiff's efforts to develop a market for its product" is outweighed by federal policy encouraging competition).

### C. *Unfair Competition Claims*

Plaintiff Galway contends that defendant Godinger has engaged in unfair competition, and is therefore liable to Galway under the Lanham Act § 43(a), 15 U.S.C. § 1125(a) (1982) as well as under common law. The Court concludes, however, that both contentions must fail. The Lanham Act, 15 U.S.C. § 1125(a), is primarily intended to protect consumers against deception and confusion regarding the origin of goods in the marketplace. *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir.1981) *aff'd*, 724 F.2d 327 (2d Cir.1983); *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 662 (2d Cir. 1979), *cert. denied*, 445 U.S. 951, 100 S.Ct.

1601, 63 L.Ed.2d 787 (1980); *Bi-Rite Enterprises, Inc. v. Button Master*, 555 F.Supp. 1188, 1193 (S.D.N.Y.1983). It prohibits "false designation of origin, of any false description or representation [of goods] including words or other symbols tending falsely to describe or represent the same...." 15 U.S.C. § 1125(a) (1982).

The two basic inquiries in a Lanham Act unfair competition claim are whether the ordinarily prudent purchaser is likely to be misled or confused as a result of the substantial similarity in appearance or trade dress of the two products, and whether the plaintiff's product has acquired secondary meaning in the marketplace. *See Industria Arredamenti Fratelli Saporiti v. Chas. Craig, Ltd.*, 725 F.2d 18 (2d Cir.1984); *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir.1981), *aff'd* 724 F.2d 327 (2d Cir.1983); *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950 (2d Cir.1980), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982); *American Greetings Corp. v. Easter Unlimited, Inc.*, 579 F.Supp. 607, 616 (S.D.N.Y.1983).

The Court holds that plaintiff Galway has not met its burden in establishing that its baby bottle has acquired secondary meaning in the marketplace, and, therefore, the Court need not reach the issue of whether or not defendant's product has created a likelihood of confusion amongst consumers in order to decide plaintiff's Lanham Act claim.[4]

Secondary meaning may be established by showing that there is "an affirmative link in the public mind to the particular producer." *Metro Kane Imports, Ltd. v. Rowoco, Inc.*, 595 F.Supp. 702, 706 (S.D.N.Y.1984). The plaintiff must show that the consumer has come to associate a particular product or its pack-

---

the Galway bottle. This evidence of defendant's intent to produce a bottle substantially similar to plaintiff's has not been rebutted by evidence of Arnold Godinger's inchoate inspiration regarding the manufacture of a decorative silver-topped baby bottle after viewing a silver-topped plain glass version in Italy in 1983; these facts

do not justify a finding of independent creation by Godinger, as he contends.

4. Plaintiff's claim of consumer confusion based on similarity of appearance is addressed under the analysis of its state law claims of unfair competition and palming off; see p. 994, *infra.*

aging with a specific manufacturer, so that copying by a competitor would lead to public confusion as to the origin of the product. *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 953 (2d Cir.1980), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982); *Harlequin Enterprises Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 949 (2d Cir.1981). Proof that a product has acquired secondary meaning cannot be adduced from sales, advertising expenses, and popularity of the product alone. These factors are merely "demonstrative ... of an effort to establish secondary meaning, not success of the effort." *Metro Kane Imports, Ltd. v. Rowoco, Inc.*, 595 F.Supp. 702, 706 (S.D.N.Y.1984). In order to demonstrate the requisite association in the public mind, successful plaintiffs often present evidence regarding the results of consumer surveys, in addition to detailing sales and advertising figures. *See, e.g., Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 78 (2d Cir.1981) (survey demonstrated that consumers associated defendant's product with plaintiff's based on copied decals and other decorations on defendant's product), *aff'd*, 724 F.2d 327 (2d Cir.1983); *Harlequin Enterprises Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 949–50 (2d Cir.1981) (plaintiff's showing of extensive national advertising, tremendous sales success, and media coverage of popularity of its books, combined with the results of a consumer survey linking plaintiff's style of book cover with plaintiff, taken together, established that plaintiff's book covers had acquired secondary meaning in the market); *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1060 (2d Cir.1979) (evidence of multimillion dollar advertising campaign over long period of time, sales success over period of many years, and research study confirming that consumers linked similar label design to plaintiff's product, taken together, established that plaintiff's label had acquired secondary meaning).

The Court recognizes that Galway's burden is particularly difficult in this case, since the baby bottle, as a new product, lacks an extensive sales or marketing history. *Cf. RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058 (1979) (plaintiff's case strengthened by evidence of popularity of product over long period of time). Moreover, Galway's use of a marketing technique limiting supply of the bottles makes assessment of popularity extremely difficult. Although Galway has demonstrated that it has spent considerable sums in advertising and promoting its bottle, its evidence, viewed as a whole, fails to show that consumers have come to associate the concept of a decorative baby bottle with the Galway product.[5]

Galway's claim of unfair competition under common law is similarly weak. This Circuit has held that where a defendant copies plaintiff's trade dress and plaintiff makes an adequate showing of likelihood of confusion of the products as a result, plaintiff need not show secondary meaning in order to obtain relief under the New York State common law of unfair competition. *Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc.*, 618 F.2d 950, 953 (1980), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982). *See also Harlequin Enterprises Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 950 (1981) (even if plaintiff had been unable to show secondary meaning, thus failing in its Lanham Act claim, it would still be entitled to an injunction under New York common law

---

**5.** Although the Court need not reach the issue of actual or probable confusion in the marketplace as evidence of a Lanham Act violation, it should be noted that plaintiff has presented evidence of only two incidents of confusion, one of which involves the use of its trademark Shannon. As noted previously, trademark issues are not before the Court in this proceeding. Also, evidence of one customer's confusion can only be viewed as "an isolated episode, not indicative of either actual confusion or the likelihood thereof," *American Greetings*, 579 F.Supp. at 616, and certainly is not probative of secondary meaning.

The absence of likelihood of confusion is discussed further at p. 995, *infra*, dealing with plaintiff's state law unfair competition claim.

The presence in the market of Waterford, another well known manufacturer of hand-cut lead crystal decorative baby bottles, is also relevant to this issue.

based on defendant's deliberate copying of its trade dress even in the absence of secondary meaning). This Court declines to extend the broad protection for trade dress to claims for copying of designs in the public domain such as plaintiff's. *See Sublime Products, Inc. v. Gerber Products, Inc.,* 579 F.Supp. 248, 251 n. 4 (S.D.N.Y. 1984) (court declined to extend standards applicable to copying of trade dress to instance of product simulation), *Gemveto Jewelry Co., Inc. v. Jeff Cooper, Inc.,* 568 F.Supp. 319, 335 (1983) ("Under the common law of New York, deliberate use of a competitor's non-functional marks or tradedress is actionable" even where secondary meaning has not been shown).

◼ In addition, state remedies for unfair competition are limited by the Copyright Act of 1976, 17 U.S.C. § 301(a) (1982), which provides:

> All legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright ... and come within the subject matter of copyright ..., whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statute of any State.

The statute, however, still permits states to afford common law remedies to "subject matter that does not come within the subject matter of copyright[.]" 17 U.S.C. § 301(b)(1) (1982).

The Second Circuit has "recognized the breadth of New York's common law tort of unfair competition[,] ... so long as the cause of action [has] not [been] preempted by the Copyright Act...." *Warner Bros. v. American Broadcasting Cos., Inc.,* 720 F.2d 231, 247 (2d Cir.1983). However, the Second Circuit has narrowed the scope of the state unfair competition tort in *Warner Bros. v. American Broadcasting Cos., Inc.,* 720 F.2d 231, 247–48 (2d Cir.1983), in which it held that state claims relying on misappropriation are preempted by the Copyright Act. However, claims based on the tort of passing off or palming off have not been preempted to the extent that they go beyond or are not equivalent to rights protected by copyright. *Warner Bros. v. American Broadcasting Co., Inc.,* 720 F.2d at 247.[6]

◼ Plaintiff Galway contends that Godinger has passed off a copy of the Galway baby bottle, and asserts that Godinger is thus liable under state law. However, this claim must fail for several reasons. First, Godinger has agreed not only to cease the use of trade dress similar to plaintiff's (use of green box and name "Shannon"), but has expressed its willingness to place its name prominently on its baby bottle box. Plaintiff's fears that consumers will confuse its bottle with Godinger's based on similarity of trade dress are thus unwarranted.[7]

◼ Plaintiff has also expressed concern that, since the bottles are often displayed or pictured in catalogues without boxes, there is a likelihood that confusion as to the origin of the product will result. This concern is unjustified in view of Godinger's current practice of affixing two

6. This policy is consistent with the objectives of 17 U.S.C. § 301 (1982), as expressed in H.R.Rep. No. 1476, 94th Cong., 2d Sess. 132, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5659, 5748:

> Section 301 is not intended to preempt common law protections in cases involving activities such as false labeling, fraudulent representation, and passing off even where the subject matter involved comes within the scope of the copyright statute.... "Misappropriation" is not necessarily synonymous with copyright infringement, and thus ... [a misappropriation cause of action] is not preempted if it is ... based neither on a right within the general scope of copyright ... nor [the] equivalent thereto.

7. Since plaintiff has failed to demonstrate sufficient actual confusion in the marketplace, the Court does not award monetary damages for the limited period of time in which defendant utilized trade dress that was alleged to be confusingly similar to plaintiff's. *See Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc.,* 618 F.2d 950, 955 (2d Cir.1980) (plaintiff not entitled to monetary relief in absence of proof that similarities in trade dress resulted in actual consumer confusion), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982).

996

labels to the bottom of its bottle, one of which reads "Godinger Silver—Tarnish Resistant—Japan," and the other of which reads "24% lead crystal—made in Japan." Godinger's labels are completely different in appearance from the labels on Galway's product. The Galway label is of a different shape and color and reads "Galway Irish Crystal—over 24% lead crystal." The differences between these labels preclude the possibility that consumers will mistake Godinger's bottle for Irish crystal such as Galway's. *See Abraham Zion Corp. v. Lebow*, 593 F.Supp. 551, 558 (S.D.N.Y.1984) (where labels in clothing marketed by defendant did not resemble labels in plaintiff's clothing, and defendant's label clearly identified him as the designer, court did not find palming off or consumer confusion regarding origin of the goods). As the Second Circuit has stated in *Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 309–10 (2d Cir.1972), "The presence of [defendant's] name on the product goes far to eliminate confusion of origin ... [T]here is hardly likelihood of confusion or palming off when the name of the manufacturer is clearly displayed." Even though Godinger's labels will not be visible when its bottle is pictured in a catalogue or newspaper advertisement, Godinger cannot be expected, as a practical matter, to label its product more prominently or effectively. *See American Rolex Watch Corp. v. Ricoh Time Corp.*, 491 F.2d 877, 878–79 (2d Cir. 1974) (where defendant made no attempt to palm off its watch as that of plaintiff, and where as practical matter the appearance of defendant's name on its watches could not be seen from a distance, court dismissed plaintiff's false designation of origin claims). *See also Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 237, 84 S.Ct. 779, 781, 11 L.Ed.2d 669 (1964) (clear labeling of product itself as well as box considered "considerable evidence of the care taken ... to prevent customer confusion....").

The Supreme Court, in *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 237, 84 S.Ct. 779, 782, 11 L.Ed.2d 669 (1964), has made it clear that "when an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article. To forbid copying would interfere with the federal policy ... of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain." Thus, in the absence of a showing of fraud or misrepresentation on the part of Godinger as to the origin of its bottle, plaintiff Galway "cannot achieve by an unfair competition claim what it failed to achieve under its [federal] copyright claim...." *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 918 (1980).

Accordingly, the Court denies plaintiff's request for a preliminary injunction, and further denies plaintiff's claims of copyright infringement and unfair competition. This ruling is based on the defendant's representation that it will continue to label its bottle as it does at present, so that product origin will be clear and confusion in the marketplace will be avoided.

SO ORDERED.