## AMITY LEATHER PRODUCTS CO., Plaintiff,

v.

## RGA ACCESSORIES, INC., Defendant.

### No. 84 Civ. 5760 (RLC).

United States District Court, S.D. New York.

Jan. 3, 1994.

---

Windels, Marx, Davies & Ives (Susan F. Jennison, Raymond T. Munsell, of counsel), New York City, for plaintiff.

Fitch, Even, Tabin & Flannery (Robert B. Jones, Joseph E. Shipley, of counsel), Chicago, IL, for plaintiff.

Burns, Handler & Burns (Arthur M. Handler, of counsel), New York City, for defendant.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Amity Leather Products Co. ("Amity") moves for an order finding defendant RGA Accessories, Inc. ("RGA") in contempt of court for having violated the court's previous injunction prohibiting RGA from using photographs of Amity's products to promote RGA's competing products. Specifically, Amity alleges that RGA violated the consent judgment by using a photograph of Amity's "Macro bag" to promote another product, the Petite Valise, through the joint venture, Smithy Accessories ("Smithy"), which is half-owned by RGA.

### I.

The prior proceedings which led up to the entry of an injunction against RGA concerned, among other things, RGA's use of a picture of an Amity product known as the "Initial Keyholder" for advertising and promoting sales of a similar product made by RGA, allegedly in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and New York state law. On April 23, 1985, the court entered a Final Judgment and Injunction on Consent permanently enjoining RGA and all persons in active concert or participation with RGA from "marketing ... any product using pictures of Amity's products to advertise and/or promote its own similar products." (Final Judgment and Injunction on Consent [Shipley Exh. A], ¶ 4.) In addition, on April 25, 1986, in a subsequent contempt proceeding concerning RGA's unauthorized use of photographs of another Amity product, the court modified the injunction to make it clear that its scope would not be limited to the "Initial Keyholder" product. (Shipley Exh. B. at 19–22.)

The alleged instant violation began in August, 1993, when Smithy employee Theresa Barry ("Barry") engaged an outside photographer Jerry Banberger ("Banberger") to prepare the "ITEM ATTACK," a promotional device which contains a photographic image purporting to show samples of the Petite Valise wallet. Barry gave Banberger three wallets to be shown in the ITEM ATTACK in different views. One wallet, a purple sam-

ple, was to be altered photographically to change its color and the position of the credit card pockets. (Banberger Tr. at 66). After the project was completed, the ITEM AT-TACK was then sent to J.C. Penney stores as a way of encouraging them to order the Petite Valise. (Shipley Aff. ¶ 10.) Plaintiff contends that at least one of the wallets depicted in the ITEM ATTACK is a sample of its own Macro Bag, not a sample of the Petite Valise.

## II.

■ A court may hold a party in civil contempt only when: (1) the order the party allegedly failed to comply with is clear and unambiguous; (2) the proof of non-compliance is clear and convincing; and (3) the party has not diligently attempted in a reasonable manner to comply. *S.E.C. v. Oxford Capital Securities Inc.,* 794 F.Supp. 104, 106 (S.D.N.Y.1992) (Conner, J.); *see also, EEOC v. Local 638, Local 28 of Sheet Metals Workers' Int'l Ass'n,* 753 F.2d 1172, 1178 (2d Cir. 1985), *aff'd,* 478 U.S. 421, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986). While defendant does not challenge the clarity of the order, it nevertheless argues that plaintiff has failed to present "clear and convincing" proof of the alleged violation, and that there is insufficient evidence to prove that RGA has not been reasonably diligent in its compliance with the court's order.

■ Amity bases its claim primarily on an examination of photographs of the items in question—i.e. photographs of the wallet depicted in the ITEM ATTACK, and photographs of Amity's own Macro bag wallet—which Amity claims are of exactly the same item. Amity relies on an analysis of these photographs as set out in the affidavit of Brownlyn Lane ("Lane"), Amity's assistant advertising manager, to support its claim.

In her affidavit, Lane stated that one of the wallets shown in the ITEM ATTACK is the same wallet which had earlier been produced and identified by B.H. Smith as being a specimen of Amity's Macro bag wallet.[1] (Lane Aff. ¶ 8.) Lane based her finding on her visual comparison of the photograph of the Amity Macro bag wallet with photographs used in the ITEM ATTACK.[2] In support of her conclusion, Lane pointed out that the pattern of scratches, scuff marks and other irregularities, including a scar and pattern of markings on the checkbook cover, apparent in the enlargement of the photograph of Amity's wallet, was identical to the markings in the enlarged ITEM ATTACK photograph. Noting the identical markings in both photographs, Lane concluded that the same wallet appears in both photographs. (Lane Aff. ¶¶ 11–14.)

Defendant, on the other hand, relies on the testimony of various individuals as proof that the wallet in question was a Smithy Accessories item and not an Amity product. However, defendant's reliance is misplaced.

Defendant first points to the testimony of Marshall Ackerman ("Ackerman"), the B.H. Smith employee with supervisory responsibility for the operations of the Smithy Accessories joint venture which produced the ITEM ATTACK. Although Ackerman testified that it was not his usual practice to send Amity bags to be photographed, (Ackerman Tr. at 123), and that the item in the ITEM AT-TACK photograph was not an Amity product, (Ackerman Tr. at 122), Ackerman could not say from personal knowledge that the samples sent to be photographed were not Amity products. Indeed, in his deposition Ackerman admitted that he did not know which specific sample Barry used in the ITEM ATTACK, (Ackerman Tr. at 121), and that he could not produce the Smithy sample

1. The wallet was produced and marked as Defendant's Exhibit J at the deposition of B.H. Smith representative Marshall Ackerman, following a request to produce a sample of each of its products similar in size, shape and appearance to the Macro bag wallet. Although Ackerman could not find a Smithy sample corresponding to the image in the ITEM ATTACK, he did produce a sample of the Macro bag which he stated was probably in his possession at the time the photo-

graph for the ITEM ATTACK was taken. (Shipley Aff. ¶ 12.)

2. The latter photographs were made from three color transparencies provided by photographer Jerry Banberger which show the same wallet specimens that are shown in the photographic image of the ITEM ATTACK. (Shipley Aff. ¶¶ 18–19.)

that was allegedly used in the ITEM ATTACK. (Ackerman Tr. at 121–122).

In addition, defendant's reliance on the testimony of Barry, the employee who delivered the samples to be photographed, is problematic. Notwithstanding her emphatic statement that the samples she delivered to the photographer were not Amity products, but rather Smithy samples which specifically had been shipped from Hong Kong, (Barry Tr. at 65, 32–34), her testimony is unconvincing. For one thing, Barry first testified that the samples came to her in a box from Hong Kong, (Barry Tr. at 33), and that she sent them to the photographer the same day that she received them. (Barry Tr. at 34.) However, she later testified that when she was told to prepare the ITEM ATTACK, she had "original samples," but "had to wait on one more." (Barry Tr. at 63–64.) She did not recall opening the box, and did not know whether there were more than three or more than one hundred samples in the box. (Barry Tr. at 33–36.) Moreover, Barry's explanation of the differences between the items in question is not convincing. When asked to compare the Amity Macro bag wallet shown to her at her deposition, which had been marked in a prior deposition as defendant's Exhibit J, with the wallet she delivered to the photographer, the only difference that she could point out was the color: she described the Amity wallet before her as being "eggplant." (Barry Tr. at 53.)

Finally, Banberger's equivocal testimony as to the identification of the Amity wallet and the sample he photographed cannot be given much weight. Although Banberger did in fact state that two black Amity wallets shown to him at his deposition were definitely not the wallets he photographed, (Banberger Tr. at 119–121, 132), he was uncertain about the purple Amity wallet, Exhibit J,

also shown to him at that time. (Banberger Tr. at 73–75). In fact he stated that the purple wallet looked like the one he photographed. (Banberger Tr. at 130.)

Clearly, the testimonial evidence on which defendant relies does not in any significant way undermine the evidence presented by plaintiff. Although it is true that ITEM ATTACK wallet appears brown, not purple, the color difference is inconsequential since Banberger himself testified that the wallet he photographed was in fact purple or a purple shade.[3] (Banberger Tr. p. 66.) Indeed, even though Barry stated that the wallet she gave to the photographer was a different color from the wallet shown to her at her deposition, she described the Amity wallet exhibited as being "eggplant," which the court believes is some shade of purple. This evidence, coupled with Ackerman's testimony that the Amity wallet in question was probably in his possession at the time the photograph was taken, (Ackerman Tr. at 179–181), suggests that the Amity wallet could very well have been photographed for the ITEM ATTACK.

Plaintiff has met its burden of presenting clear and convincing evidence that Amity's Macro bag wallet was used in the ITEM ATTACK. The Lane affidavit, and the court's own visual examination of the photographic exhibits comparing the Amity wallet with the wallet photographed in the ITEM ATTACK, is persuasive proof.[4] This proof, contrasted with defendant's inconclusive testimonial evidence, as well as its inability to produce the Smithy sample allegedly used in the ITEM ATTACK, clearly convinces the court that a photograph of plaintiff's product was used to promote the Petite Valise product.

■ Even though it is clear that plaintiff's product was used in the ITEM ATTACK,

---

**3.** Although Lane conceded that the wallet in the ITEM ATTACK photograph did not appear to be purple, as did the photograph of the Amity wallet, she noted that the color difference may be attributable to lighting or photographic techniques. (Lane Aff. ¶ 9.)

**4.** Other courts examining the issue of whether a plaintiff has proven that a defendant wrongly used its photograph, in violation of Section 43(a) of the Lanham Act, have relied on the courts'

own visual inspection of the items in question. *See, e.g., American Optical Company v. Rayex Corp.*, 266 F.Supp. 342 (S.D.N.Y.1966) (Tenney, J.) (a visual comparison of the picture in question reveals, at least in a prima facie matter, if not conclusively, that the catalogue picture was a photograph of plaintiff's product). *See also, Ebeling & Reuss Co. v. International Collectors Guild, Ltd.*, 462 F.Supp. 716, 720 (E.D.Pa.1978).

defendant nevertheless argues that a contempt order is not appropriate considering its diligence in attempting, in a reasonable manner, to comply with the court's earlier order. Such diligence, defendant maintains, is manifested by the fact that it has complied with the injunction for the past seven years without incident, and that it was B.H. Smith, not RGA, which controlled the activities causing the alleged violation.

Defendant's contentions are without merit. The court does not find the mere passage of time to be a sufficient indicator of diligence. Moreover, evidence that Barry, the person entrusted with delivering samples to be photographed for the ITEM ATTACK, was never instructed and had no knowledge of any policy by Smithy not to use Amity's products in its own photographs, (Barry Tr. at 60–61), seems to indicate that defendant was lax, to say the least, in making sure that an incident such as this one never occurred.

Furthermore, defendant's attempt to shift all the responsibility of the alleged violation to another corporation is inappropriate. The record indicates that the Petite Valise product is marketed through a joint venture of RGA and B.H. Smith, Inc. known as Smithy Accessories. (Ackerman Tr. pp. 8–10, 14, 25–27.) As the court's order permanently enjoins "RGA, its successors, assigns and affiliates, its officers, agents and employees, and all persons in active concert or participation with RGA" from using pictures of Amity's products to advertise and/or promote its own similar product, the prohibited use of Amity's product in the ITEM ATTACK can certainly be ascribed to defendant RGA. As joint venturers in the Smithy enterprise, RGA and B.H. Smith are both jointly liable for the joint venture's acts. *Tehran–Berkeley v. Tippetts–Abbett, et al.,* 888 F.2d 239, 243 (2d Cir.1989) (citations omitted). It is inconsequential that RGA lacks supervisory authority over the employees [5] charged with delivering the ITEM ATTACK photographs to the photographer. Therefore, RGA's failure to make sufficient efforts to prevent these employees from using pictures of an Amity product in its pro-motional document is certainly evidence of RGA's own lack of diligence.

As RGA has not been diligent in its efforts to comply with the court's order, and has violated the order by using an image of plaintiff's product in the ITEM ATTACK piece, there is sufficient evidence to find defendant RGA in civil contempt. Accordingly, Amity's request for an order holding RGA in civil contempt for violation of the consent judgment entered on April 23, 1985 is granted.

### III.

Although plaintiff seeks an order requiring defendant to pay plaintiff's attorneys fees and costs reasonably incurred in this proceeding, such an order is inappropriate in a case such as this one where there is no adequate showing that defendant willfully violated the court's earlier order. *See Vuitton et Fils, S.A. v. Carousel Handbags, Inc.,* 592 F.2d 126, 130 (2d Cir.1979). However, plaintiff is entitled to compensation for defendant's unlawful use of an Amity product since the distribution of the ITEM ATTACK may have improperly influenced J.C. Penney representatives to order the Petite Valise, although they had the image of Amity's Macro bag wallet in mind. Therefore, to avoid defendant's unjust enrichment, RGA must provide an accounting and pay Amity the profits made on sales of the Petite Valise product to J.C. Penney. *See Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd.,* 885 F.2d 1, 7 (2d Cir.1989).

Furthermore, it should go without saying that defendant RGA Accessories, Inc., its successors, assigns, and affiliates, its officers, agents, and employees, and all persons in active concert or participation with RGA, including Smithy Accessories, must cease and desist from further commercial use of the ITEM ATTACK document. Lastly, defendant is to send a written disclaimer to all recipients of the ITEM ATTACK notifying them that the products pictured in ITEM ATTACK document mailed in August, 1993 are not specimens of the Smithy Petite Valise, and requesting them, if they still have

---

5. Barry and her immediate supervisor, Barbara Sweet, work for Smithy Accessories, are paid by RGA and are supervised by Ackerman who is employed by B.H. Smith.

any ITEM ATTACK document in their possession, to destroy it or return it to Smithy Accessories.

### IV.

Based on the foregoing analysis, plaintiff's motion for an order finding defendant in contempt is granted. Following an accounting of sales made of the Petite Valise product to J.C. Penney, defendant is to pay plaintiff the profits derived from those sales. In addition, defendant must cease from further violations of the order, notify recipients of the ITEM ATTACK that the products depicted are not specimens of the Smithy Petite Valise and request that they destroy or return to Smithy any ITEM ATTACK document still in their possession.

**IT IS SO ORDERED.**